2016 IL App (1st) 141022

FOURTH DIVISION
September 8, 2016

No. 1-14-1022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 3228 |
| | ) | |
| ANTHONY SHIEF, | ) | Honorable |
| | ) | Nicholas R. Ford, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE ELLIS delivered the judgment of the court, with opinion.
Justices McBride and Howse concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Anthony Shief was convicted of the first-degree murder of Leroy Willis in 2009. In 2012, defendant mailed a postconviction petition to the clerk of the circuit court of Cook County, but the clerk did not docket his petition. After inquiring into the status of his petition several times, defendant refiled his petition one year later. The petition argued that the prosecution had knowingly presented perjured testimony at defendant's trial, that the trial court erred in denying his motion to suppress identification testimony, that the witnesses against defendant were not sufficiently credible to prove him guilty beyond a reasonable doubt, and that his appellate counsel was ineffective for failing to raise these issues on direct appeal. The trial court summarily dismissed the petition.

¶ 2    In this appeal from the summary dismissal, defendant raises two issues. First, he argues that we should vacate the dismissal of his petition and remand for second-stage postconviction proceedings because the clerk failed to promptly docket his petition pursuant to section 122-1(b) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(b) (West 2012)). Second, he argues that the trial court erred in summarily dismissing his petition because it stated the gist of a claim

that his appellate counsel was ineffective for failing to raise a challenge to the admissibility of gang evidence presented at defendant's trial.

¶ 3     We affirm. Defendant is not entitled to remand for second-stage postconviction proceedings, because the statute requiring the clerk to promptly docket his petition is directory, not mandatory. The statute prescribes no consequences for the clerk's failure to promptly docket a petition, and defendants' rights to timely consideration of their petitions will not be injured by a directory reading.

¶ 4     With respect to the merits of defendant's petition, we conclude that defendant has forfeited his argument that his counsel on direct appeal was ineffective for failing to challenge the gang evidence because he did not raise that argument in his petition. And even if defendant had raised that argument, we would hold that defendant failed to state the gist of an ineffectiveness claim because the gang evidence was admissible.

¶ 5                                    I. BACKGROUND

¶ 6     We previously discussed the evidence presented at defendant's trial in our order affirming defendant's conviction on direct appeal. *People v. Shief*, No. 1-09-1577 (2011) (unpublished order under Supreme Court Rule 23). We recount the evidence only to the extent it is necessary to understand the issues relevant to defendant's postconviction petition.

¶ 7     At trial, the State's evidence showed that defendant shot Willis with a sawed-off shotgun in the early morning hours of June 8, 2002, as defendant attempted to hijack the car that Willis had parked at a department store. Janice Minnis, who was with Willis when he was shot, described the incident but could not identify the shooter because she was intoxicated at the time. Darrell Harvey, who observed the shooting as he was driving by, identified defendant as the shooter. Defendant's fingerprints were found in and outside the car.

¶ 8     The State also presented the grand jury testimony of Adam Pegues. Before the grand jury, Pegues testified that, in 2002, defendant had admitted to shooting someone in the department store parking lot during a robbery attempt. At the time Pegues testified before the grand jury, he was facing charges for a Class X felony. (The record does not reflect the specific charges that Pegues faced.) At trial, Pegues recanted his grand jury testimony and testified that defendant never told him that he had shot anyone. Pegues said that he had testified to the contrary in front of the grand jury because the detectives who had questioned him had threatened and beat him.

¶ 9     When the State began to question Pegues about his former gang membership, the court interjected and told the jury not to consider evidence of defendant's gang membership as evidence that he shot Willis:

> "I am going to allow the introduction of this gang membership not as evidence against [defendant] because it is not. I am indicating to you right now this is not evidence of his guilt, [defendant's] guilt in any way. I believe it is going to be at least asserted at this point that they are members of the same organization. Any bias, and that's for you to decide whether or not it exists, that might incur because they are members of the same organization is a question for you to consider as it relates to the testimony offered. But you may not, and I am emphasizing this, not consider membership within this organization as evidence of guilt on the part of [defendant]. Do you all understand that? They all answered yes."

¶ 10    In his grand jury testimony, Pegues testified that he and defendant were both members of the Gangster Disciples street gang in 2002. At trial, Pegues admitted that he had been a member of the gang "a long time ago" but said that he did not know whether defendant had been a

member. Then the State questioned Pegues about the possibility of retaliation against gang members who testified against other gang members:

"Q. Having been a member of the Gangster Disciples street gang, the gang doesn't like it when you testify against a fellow member in court, correct?

A. I'm not a member.

Q. You were a member?

A. I been out of the association for years. I gave my life to God. This is what I do. No more associating.

Q. There is no question pending. When you were a member of the Gangster Disciples street gang, the gang didn't like it when you testified in court against a fellow member, correct?

A. I don't know anything about that.

Q. You didn't know anything about the gang rules?

A. Gangs snitch on each other all the time. What that got to do with it?

Q. Would they pat you on the back if they knew that you testified against someone in court that was a Gangster Disciple?

A. If I'm no longer associated with that gang why should it matter to me?

Q. Back then when you were a member of the Gangster Disciples it mattered if you testified against someone in the gang, correct?

A. A long time ago, yes.

Q. They didn't throw a party for you and say good job for testifying against one of our [*sic*] fellow members, right?

A. Yes.

Q. They threw a party for you?

A. No.

Q. So it was a bad thing, right?

A. Yes."

Pegues never directly testified that he had been threatened with retribution for testifying against defendant or that the Gangster Disciples regularly retaliated against members who testified against other members.

¶ 11    In its rebuttal closing argument, the State argued that Pegues recanted his grand jury testimony because, when called to testify "against his fellow [G]angster [D]isciple street gang member, he [would not] do it." The State added that there were "ramifications for testifying against another [G]angster [D]isciple," even though Pegues would not "get up there and say it." The State urged the jury to credit Pegues's grand jury testimony, instead.

¶ 12    The jury found defendant guilty of first-degree murder. Defendant filed a posttrial motion that alleged in part that the trial court had erred in permitting the State to introduce evidence of his membership in the Gangster Disciples. The trial court denied the motion and sentenced defendant to 75 years' incarceration.

¶ 13    On direct appeal, defendant raised three issues: (1) that the trial court erred in precluding him from impeaching Harvey with evidence that Harvey had a pending charge of driving under the influence at the time of the shooting, (2) that the trial court erred in precluding him from introducing testimony from the 911 operator that Harvey was "possibly drunk" when he reported the offense, (3) that his sentence was excessive, and (4) that his mittimus should be corrected. This court affirmed defendant's conviction and sentence and corrected defendant's mittimus. *Shief*, No. 1-09-1577.

¶ 14    On December 5, 2012, defendant mailed a postconviction petition to the clerk of the circuit court of Cook County. The clerk stamped the petition, "received," on December 11, 2012, but did not docket it. About three months later, defendant wrote to the clerk asking for "an update [on the] status [of his] petition." Defendant also wrote the clerk in May 2013 and September 2013, asking for updates on the status of his petition. In response to his September 2013 letter, the clerk wrote, "No P/C ever filed."

¶ 15    Defendant mailed his petition to the clerk again, including an explanation of the clerk's failure to docket his petition and his correspondence to the clerk. The clerk stamped the petition "received" on November 27, 2013, and docketed the petition on December 2, 2013.

¶ 16    The petition raised four issues: (1) that the prosecution had knowingly presented perjured testimony at defendant's trial, (2) that the trial court erred in denying his motion to suppress identification testimony, (3) that the witnesses against defendant were not sufficiently credible to prove him guilty beyond a reasonable doubt, and (4) that his appellate counsel was ineffective for failing to raise these issues on direct appeal.

¶ 17    In discussing the insufficiency of the State's evidence, defendant argued that it was likely that Pegues had testified falsely in front of the grand jury in order to curry favor with the prosecution in his pending Class X case. Defendant asserted that the State knew that Pegues would recant and "use[d] this to file a motion to admit gang evidence." Defendant added that there was "no evidence that [he] was a Gangster Disciple."

¶ 18    The trial court summarily dismissed the petition, finding that defendant's first three claims lacked merit. And, as a result, the court also concluded that appellate counsel could not be considered ineffective for failing to raise them on direct appeal. The court did not address

whether counsel was ineffective for failing to raise a challenge to the gang evidence introduced at defendant's trial. Defendant filed this appeal.

¶ 19                                    II. ANALYSIS

¶ 20                              A. Docketing of Petition

¶ 21     Defendant first argues that this case should be remanded for second-stage postconviction proceedings because the circuit court clerk failed to promptly docket his petition pursuant to section 122-1(b) of the Act. According to defendant, the clerk's failure to comply with section 122-1(b) requires that his petition be remanded for second-stage proceedings because that provision is mandatory rather than directory.

¶ 22     The State contends that section 122-1(b) is a directory statute, and the clerk's failure to promptly docket defendant's petition does not automatically entitle defendant to second-stage proceedings.

¶ 23     This issue presents a question of statutory construction, so we apply *de novo* review. *People v. Gutman*, 2011 IL 110338, ¶ 12.

¶ 24     Section 122-1(b) of the Act states that postconviction proceedings are "commenced by filing with the clerk of the court in which the conviction took place a petition (together with a copy thereof) verified by affidavit." 725 ILCS 5/122-1(b) (West 2012). That section also states, "The clerk shall docket the petition for consideration by the court pursuant to Section 122-2.1 [of the Act] upon his or her receipt thereof and bring the same promptly to the attention of the court." *Id.*

¶ 25     The parties agree that the clerk did not promptly docket the petition or notify the court that defendant had sent in a postconviction petition under section 122-1(b). Instead, the question

here centers on the appropriate consequences for the clerk's failure to comply with section 122-1(b).

¶ 26   The consequences of a government official's failure to comply with a procedural statute hinges on whether the statute is mandatory or directory. *People v. Delvillar*, 235 Ill. 2d 507, 516 (2009). "[T]he mandatory/directory dichotomy 'simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " (Internal quotation marks omitted.) *Id.* (quoting *People v. Robinson*, 217 Ill. 2d 43, 51-52 (2005)). A statute is merely directory if "no specific consequence is triggered by the failure to comply with the statute." *Delvillar*, 235 Ill. 2d at 515.

¶ 27   We begin with the presumption " 'that language issuing a procedural command to a government official indicates an intent that the statute is directory.' " *In re M.I.*, 2013 IL 113776, ¶ 17 (quoting *Delvillar*, 235 Ill. 2d at 517). "This presumption is overcome, and the provision will be read as mandatory, under either of two conditions: (1) when there is negative language prohibiting further action in the case of noncompliance or (2) when the right the provision is designed to protect would generally be injured under a directory reading." *M.I.*, 2013 IL 113776, ¶ 17.

¶ 28   Turning to the first exception to the presumption, there is no language in section 122-1(b), or anywhere else in the Act, prohibiting further action or specifying a consequence if the clerk does not timely docket a postconviction petition. Certainly, no language requires the petition to be advanced to the second stage of postconviction proceedings, as defendant suggests.

¶ 29   Defendant argues that section 122-1(b) should be read in conjunction with section 122-2.1 of the Act (725 ILCS 5/122-2.1 (West 2012)), which requires the trial court to conduct a

first-stage review of a petition within 90 days. If the court does not comply with the 90-day time limit, the postconviction petition is automatically advanced to the second stage of proceedings. See *People v. Porter*, 122 Ill. 2d 64, 84 (1988). Defendant contends that section 122-1(b) should be read in the same way as section 122-2.1 because the two provisions "operate together in order to ensure that a petitioner receives prompt judicial action on his petition."

¶ 30    But defendant ignores the critical difference between sections 122-1(b) and 122-2.1: section 122-2.1 expressly provides a consequence for the trial court's noncompliance with the 90-day rule. Specifically, section 122-2.1 states that, if the court does not dismiss the petition within 90 days, "the court shall order the petition to be docketed for further consideration." 725 ILCS 5/122-2.1(b) (West 2012). In finding that section 122-2.1 is mandatory, our supreme court has highlighted that this language "prescribes the result that will occur" if the 90-day deadline is not met. *Porter*, 122 Ill. 2d at 85. By contrast, section 122-1(b) prescribes no such result for the clerk's failure to promptly docket a postconviction petition. Thus, we are not persuaded by defendant's attempt to analogize section 122-1(b) to section 122-2.1, even if they do ultimately serve the same purpose.

¶ 31    In fact, the comparison to section 122-2.1 cuts the other way for defendant. The fact that section 122-2.1 prescribes a consequence for noncompliance, but section 122-1(b) does not, demonstrates that the General Assembly did not intend the same consequence—automatic advancement of the petition to the second stage—for the clerk's violation of section 122-1(b). See *People v. Edwards*, 2012 IL 111711, ¶ 27 ("Where language is included in one section of a statute but omitted in another section of the same statute, we presume the legislature acted intentionally and purposely in the inclusion or exclusion.").

¶ 32     Moreover, while we understand why defendant seeks the remedy of automatic advancement to second-stage proceedings by analogizing to the remedy contained in section 122-2.1, it is at least questionable whether that remedy would be appropriate for a violation of section 122-1(b). Each section concerns the prompt resolution of postconviction petitions, but they are aimed at different governmental actors. Section 122-2.1 serves as an incentive to circuit judges to swiftly adjudicate postconviction petitions by automatically advancing these cases on their dockets if the judge fails to promptly act. Section 122-2.1, on the other hand, does not concern the actions of the circuit judge but rather those of the clerk. The remedy of automatic advancement would force the hand of the judge based on the actions of a distinct governmental official, the clerk. Circuit judges would lose control of their docket based on something entirely outside their control. While that may feel like a distinction without a difference to a prisoner awaiting the adjudication of his postconviction petition, it might be one reason why the General Assembly imposed a consequence for the circuit court's failure to promptly act on a postconviction petition while *not* imposing such a remedy for the clerk's inaction.

¶ 33     We also recognize that section 122-1(b) uses the word "shall," which suggests that the clerk is required to comply with the statute. But our supreme court has stressed that " 'in no case regarding the mandatory/directory dichotomy has "shall" controlled the outcome.' " *M.I.*, 2013 IL 113776, ¶ 19 (quoting *Robinson*, 217 Ill. 2d at 53). And while the legislature clearly intended that the clerk would follow section 122-1(b), there is no indication that the legislature intended the clerk's noncompliance with that section to result in automatic advancement of any postconviction petition to the second stage.

¶ 34     We now turn to the second exception to the presumption that statutes directing government officials are directory: whether "the right the provision is designed to protect would

generally be injured under a directory reading." *M.I.*, 2013 IL 113776, ¶ 17. In order to meet this exception, it is not enough to show that, in a particular case, a party's rights may be prejudiced; the party must show that prejudice would *generally* occur. See, *e.g.*, *People v. Geiler*, 2016 IL 119095, ¶ 23 (finding that defendant had not overcome directory presumption under second exception because, while a defendant may have been prejudiced in a particular case, "no reason exists to believe that would generally be true"); *Robinson*, 217 Ill. 2d at 57 (finding that defendant had not overcome directory presumption under second exception because, "[w]hile the right to appeal might be injured by untimely service in a given case, there is no reason to believe that it generally would be"); *Delvillar*, 235 Ill. 2d at 518 (failure to admonish defendant of immigration consequences of guilty plea would not "generally" injure defendants because defendants who were United States citizens would not be affected at all).

¶ 35 Defendant argues that the clerk's delay in docketing postconviction petitions would injure defendants' "right[s] to *** efficient and speedy judicial review of [their] petition[s]." Defendant argues that only a mandatory reading would ensure that postconviction petitions are promptly docketed so that the court can expediently review them.

¶ 36 We acknowledge that, in certain cases, a clerk's failure to promptly docket a petition might prejudice a defendant's rights to pursue postconviction relief. But that fact is not itself sufficient to show that defendants' rights will generally be prejudiced. For example, in *Robinson*, 217 Ill. 2d at 58-59, the Illinois Supreme Court held that a provision requiring the clerk to deliver notice of the dismissal of a postconviction petition to the defendant within 10 days of its entry was directory. In addressing whether a directory reading would prejudice a defendant's right to appeal, the court noted that "[w]hile the right to appeal might be injured by untimely service in a given case, there [was] no reason to believe that it generally would be." *Id.* at 57. The court noted

that a notice of appeal must be filed within 30 days of a final judgment and that notices of appeal are easy to complete, so even if notice was not given in 10 days, "there are likely to be many cases *** in which the right to appeal is unaffected by untimely service." *Id.* Thus, a violation of the service requirement was "not so likely to prejudice the right to appeal as to require an exception to the general rule that procedural commands to government officials are directory." *Id.*

¶ 37    Similarly, in *Geiler*, 2016 IL 119095, ¶ 24, the supreme court held that Illinois Supreme Court Rule 552 (eff. Sept. 30, 2002), which required a police officer who issues a traffic citation to transmit the ticket to the circuit court clerk within 48 hours of the arrest, was directory. The court recognized that "a defendant may be prejudiced by a Rule 552 violation if there is a lengthy delay in transmitting a citation in a given case, but no reason exists to believe that would generally be true." *Geiler*, 2016 IL 119095, ¶ 23. The court stressed that, under another rule, a defendant's first appearance on a traffic citation must be set 14 to 60 days after his arrest. *Id.* Consequently, even if the citation had not been transmitted to the clerk within 48 hours, the citation would still have to be filed with the clerk within 14 or 60 days, "and the defendant would be unaffected by the delay in transmitting the citation." *Id.*

¶ 38    In this case, like *Robinson* and *Geiler*, we conclude that the likelihood of prejudice is not so great that we must consider the prompt-docketing requirement to be mandatory under the second exception. Even if the clerk fails to docket a petition promptly, a defendant could simply refile his postconviction petition in order to have it considered. In fact, that is precisely what defendant did in this case.

¶ 39    And even if that refiled petition were untimely, that fact would have no effect on the court's first-stage review of the petition. Courts reviewing a postconviction petition at the first

stage may not dismiss a petition because it is untimely. See *People v. Perkins*, 229 Ill. 2d 34, 48 (2007) ("[A] *pro se* petitioner need not include any allegations on timeliness or an excuse for a delay in filing to advance past the first stage," as such allegations "are irrelevant at the first stage of the proceedings."); *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009) ("The issue of timeliness is first considered by the trial court at the second stage."). So even if defendant's petition was untimely in this case, it would have had no effect on the trial court's review of his petition.

¶ 40 And at the second stage, with the benefit of counsel, a defendant could raise the clerk's failure to docket his petition as a reason to excuse his untimely filing. See 725 ILCS 5/122-1(c) (West 2012) (excusing late filing of postconviction petition where petitioner "alleges facts showing that the delay [in filing] was not due to his or her culpable negligence"). Indeed, defendant raised the clerk's delay as an excuse in this case:

> "Petitioner['s] *** late presentation of his post-conviction petition *** is not due to him being culpably negligent but it is due to the clerk of the circuit court of Cook County not filing his *** timely petition back on December 11, 2012."

Thus, in most circumstances, a clerk's delay in docketing a petition will have no effect on a court's consideration of the merits of a postconviction petition.

¶ 41 While a delay in docketing is by no means desirable, and the clerk's delay in this case was wholly unreasonable, such a delay is not likely to preclude a defendant from having the substance of his petition heard. And nothing in the record suggests that dilatory docketing is a widespread problem necessitating a mandatory reading of section 122-1(b). County clerks are obligated to maintain the dockets of their courts by law and may be subject to fines or removal from office for failing to do so. See 705 ILCS 105/17 (West 2012) (clerk's failure to make

proper entries into court docket in reasonable time may result in fine of $100 and eventual removal from office). In light of these consequences, we disagree that it is likely that clerks will generally disregard their duties to promptly docket a petition.

¶ 42    It is true that, even where a provision is directory, "a defendant may still be entitled to relief if he can demonstrate he was prejudiced by the violation" of the provision. *Geiler*, 2016 IL 119095, ¶ 24. Thus, a directory reading would not preclude a defendant from obtaining relief where he suffered prejudice due to a delay in docketing his petition. Typically, when we consider prejudice, we consider prejudice to a party's ability to properly prepare and present its case. See, *e.g.*, *Robinson*, 217 Ill. 2d at 58-59 (petitioner not prejudiced by two-day delay in receiving order dismissing postconviction petition because he was able to file timely notice of appeal); *Geiler*, 2016 IL 119095, ¶ 26 (police officer's delay in transmitting traffic citation did not prejudice defendant in preparing defense because citation was filed well before defendant's first court appearance).

¶ 43    Here, defendant is not making such a claim. He is simply arguing that the unreasonable delay in the consideration of his petition, in and of itself, is sufficiently prejudicial to warrant advancement of his case to second-stage proceedings. As sympathetic as we are with defendant's claim, and as much as we join him in condemning the unacceptable delay, we do not find this one-year delay sufficient to warrant a vacatur of the dismissal of his postconviction petition and automatic advancement to second-stage proceedings. In the end, defendant refiled his petition, presented it, and received a fair hearing on the merits; he does not contend otherwise.

¶ 44    We hold that the prompt-docketing requirement of section 122-1(b) is directory, rather than mandatory. There is no negative language in the statute requiring automatic advancement of the petition to second-stage proceedings when the clerk does not promptly docket a

postconviction petition and reading the statute as directory will not injure defendants' rights to timely resolution of their postconviction petitions.

¶ 45                     B. Ineffective Assistance of Appellate Counsel

¶ 46     We now turn to the merits of defendant's postconviction petition. Defendant argues that the trial court erred in summarily dismissing the petition because he raised the gist of a claim that his appellate counsel was ineffective for failing to raise the inadmissibility of the State's gang evidence on direct appeal. According to defendant, it was at least arguable that, had counsel raised this issue, he would have obtained relief on appeal.

¶ 47     The State contends that defendant waived this issue by failing to raise it in his petition. Alternatively, the State argues that defendant has not stated the gist of an ineffectiveness claim where the gang evidence was admissible.

¶ 48     Under the Act, postconviction proceedings occur in three stages. *People v. Allen*, 2015 IL 113135, ¶ 21. At the first stage—the stage at issue in this case—the trial court reviews the substance of the petition and may dismiss it if the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2012). "A petition may be dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact—relying on an indisputably meritless legal theory or a fanciful factual allegation." (Internal quotation marks omitted.) *Allen*, 2015 IL 113135, ¶ 25. "If a petition alleges sufficient facts to state the gist of a constitutional claim, even where the petition lacks formal legal argument or citations to authority, first-stage dismissal is inappropriate." *Id.* ¶ 24. "In evaluating the allegations in the petition, the *** court must take them as true and construe them liberally." *Id.* ¶ 25. We review the summary dismissal of a postconviction petition *de novo*. *People v. Cathey*, 2012 IL 111746, ¶ 17.

¶ 49    We first address the State's argument that defendant waived his ineffectiveness claim by failing to plead it in his petition. Any constitutional claim "not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2012). Thus, a defendant may not raise claims for the first time on appeal from the trial court's dismissal of his postconviction petition. *Cathey*, 2012 IL 111746, ¶ 21; *People v. Jones*, 213 Ill. 2d 498, 504 (2004).

¶ 50    Defendant alleged that he "was denied effective assistance of appellate counsel where counsel failed to raise meritorious issues on direct appeal." But he did not specifically allege that his appellate attorney was ineffective for failing to challenge the admissibility of the gang evidence. Instead, he listed three issues that he claimed his appellate attorney should have raised:

"(1) [That defendant] was denied a fair trial due to prosecution misconduct, where the State's *** only eyewitness gave false testimony and [the] prosecutors, knowing it false, did not correct it.

***

(2) [That the] trial court abused its discretion when it denied [defendant's] motion to suppress the identification by the State's witness Darrell Harvey.

***

(3) [That defendant's] conviction must be reversed where the evidence presented and relied on for conviction [was] questionable testimony [with] reduced credibility and [it] fail[ed] to remove all reasonable doubt of [defendant's] guilt."

¶ 51    Defendant's only reference to the gang evidence came in his discussion of why Pegues was not a credible witness. Defendant wrote:

"Adam Pegues testified that in November 2005, Chicago police detectives Lombard and Bloore visited him in the Vermillion County Jail. *** The visit occurred

four days before Pegues went to trial on a Class X felony, which carried a six to 30-year range sentence. *** However, neither [the] detectives [n]or Pegues ever explain[ed] how or why the visit came about. *** [T]he most reasonable explanation is, either Pegues' case involve[d] a sawed-off shotgun or Pegues contacted the Chicago police with hopes and intentions of making a deal on his own case(s). Which he was successful in doing, but for some reason or another Pegues' plan did not work out as he planned. Which is how and why the State's Attorney knew Pegues was going to recant his prior statements when he reached [defendant's] trial. The State's Attorney knew this ahead of trial and sought an excuse to *** file a motion to admit gang evidence. Yet, there [was] no evidence that [defendant] is a Gangster Disciple."

Defendant then went on to highlight Pegues's motive to curry favor with the prosecution when he gave them his statements inculpating defendant.

¶ 52    Nor did the trial court consider whether appellate counsel was ineffective for failing to raise the gang evidence's inadmissibility. Instead, the trial court only considered whether defendant stated the gist of a claim that his appellate counsel was ineffective for the three reasons expressly listed by defendant.

¶ 53    Even liberally construing the contentions in the petition, we fail to see how defendant raised this claim below. Defendant did not raise this issue by simply asserting that his appellate counsel was ineffective. See *People v. Reed*, 2014 IL App (1st) 122610, ¶ 56 ("[A] petition which merely asserts the petitioner received ineffective assistance of counsel does not satisfy even the low threshold of presenting a modest amount of detail, even without legal argument or citation to legal authority." (Internal quotation marks omitted.)). And defendant never discussed the inadmissibility of the gang evidence in the portion of his petition that discussed his appellate

attorney's performance. As we noted above, the only time defendant even mentioned the gang evidence was to suggest that the prosecution used that evidence as a means to introduce Pegues's prior inconsistent statement, which the prosecution knew Pegues would recant at trial, not to argue that the gang evidence was inadmissible. And without any indication that defendant was raising this claim in his petition, the trial court did not address it in its written order dismissing defendant's petition. See *People v. Cole*, 2012 IL App (1st) 102499, ¶ 13 (refusing to consider " 'implicit' claims in the defendant's postconviction petition *** raised for the first time on appeal when those postconviction issues were never ruled upon by the circuit court").

¶ 54    Our conclusion is supported by *Reed*, 2014 IL App (1st) 122610, ¶ 59, where this court held that the defendant forfeited an argument that the police took his statement in violation of his due process rights, even though his *pro se* petition had claimed that his statement was inadmissible on hearsay grounds. Even though the general admissibility of the statement and the issue of his appellate counsel's performance had both been raised in the petition, defendant could not raise the constitutional claim on appeal because "the respects in which [defendant] allegedly received ineffective assistance of appellate counsel [were] distinctly different." *Id.* ¶ 60. Here, like *Reed*, defendant raised distinct reasons for his appellate attorney's alleged ineffectiveness in his petition and on appeal. And defendant's petition did not claim that the gang evidence was inadmissible at trial. Thus, even when liberally construed, defendant has forfeited his argument that his appellate counsel was ineffective for failing to raise the inadmissibility of the gang evidence in his direct appeal.

¶ 55    Even had defendant properly raised this issue in his petition, we would affirm the trial court's summary dismissal of the petition. We evaluate a claim of ineffective assistance of appellate counsel under the same two-prong standard set out in *Strickland v. Washington*, 466

U.S. 668 (1984). *People v. Harris*, 206 Ill. 2d 1, 58 (2002). Under the first prong, the defendant must show that his attorney's performance was deficient, *i.e.*, that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In the context of a claim of ineffectiveness of appellate counsel, the appropriate question is "whether a reasonably competent attorney, in the same circumstances, would have decided not to raise the [issue] on direct appeal." *Harris*, 206 Ill. 2d at 64. Under the second prong, the defendant must show that appellate counsel's deficient performance "caused prejudice, *i.e.*, there [was] a reasonable probability that, but for appellate counsel's errors, the appeal would have been successful." *People v. Golden*, 229 Ill. 2d 277, 283 (2008).

¶ 56    Defendant was not required to conclusively establish his ineffective assistance claim at the first stage of postconviction proceedings. " 'At the first stage of postconviction proceedings *** , a petition alleging ineffective assistance may not be summarily dismissed if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced.' " (Emphases in original.) *People v. Tate*, 2012 IL 112214, ¶ 19 (quoting *People v. Hodges*, 234 Ill. 2d 1, 17 (2009)). We do not consider whether counsel's decisions were the product of a reasonable strategy at the first stage. *Tate*, 2012 IL 112214, ¶ 22.

¶ 57    In this case, it is not arguable that defendant was prejudiced, because the gang evidence was admissible at defendant's trial, and consequently, there was no reasonable probability that this issue would have been successful on appeal. Evidence that the defendant was affiliated with a gang may be admissible if it is relevant and its probative value is not substantially outweighed by its prejudicial effect. *People v. Johnson*, 208 Ill. 2d 53, 102 (2003). This court has held that gang-related evidence is admissible "to explain why trial witnesses recanted their grand jury

testimony and testified differently at trial." *People v. Dixon*, 378 Ill. App. 3d 535, 550 (2007); *People v. Tolliver*, 347 Ill. App. 3d 203, 222 (2004).

¶ 58 In this case, the State introduced evidence of defendant and Pegues's affiliation with the Gangster Disciples to explain why Pegues recanted his grand jury testimony at trial. By presenting evidence that defendant and Pegues were both members of the gang, the State could draw the inference that Pegues would be hesitant to testify against a fellow gang member at trial—due to the possibility of reprisal—and that the jury should thus credit his grand jury testimony over his trial testimony. And the State expressly made this inference during its rebuttal closing argument, saying that Pegues would not testify against a fellow Gangster Disciple "[b]ecause there's ramifications for testifying against another [G]angster [D]isciple."

¶ 59 Moreover, the risk of unfair prejudice posed by this evidence did not substantially outweigh its probative value. Just before the prosecution began to question Pegues about his gang membership, the court emphasized that the jury should not consider defendant's gang membership as evidence of his guilt in this case. In fact, the court stressed that point three times to the jury, then asked whether the jurors understood that concept. All of the jurors said they understood. Nor did the State attempt to use the evidence of defendant's gang membership to suggest that defendant was violent or more likely to have committed the murder during its closing argument. Because the gang evidence was limited to the relevant matter for which it was admitted, the risk of unfair prejudice was slight.

¶ 60 Defendant argues that the gang evidence was inadmissible to explain why Pegues recanted because Pegues testified that he inculpated defendant only because the police had threatened and physically coerced him. While defendant accurately recites Pegues's explanation for his differing testimony, that was simply one explanation for Pegues's conduct. The State was

entitled to offer a different explanation and to introduce evidence undermining Pegues's trial testimony. See Ill. R. Evid. 607 (eff. Jan. 1, 2011) (party may impeach its own witness). The jury was not required to accept Pegues's explanation for his changing testimony.

¶ 61    Defendant also argues that the gang evidence was not admissible to explain Pegues's recantation because the State failed to establish that Pegues actually faced ramifications if he testified against a fellow gang member. Defendant notes that, in its closing argument, the State conceded that Pegues would not admit that he could face retribution for testifying against a gang member.

¶ 62    We disagree that the State was required to elicit this testimony from Pegues. This court has rejected the notion that, for gang evidence to be admissible to explain a witness's recantation, the State must have evidence of "an actual decision by the gang to intimidate [the specific] witness or the gang's practice to 'always' intimidate testifying witnesses." *Dixon*, 378 Ill. App. 3d at 550. As we have explained, "the witness may have a legitimate fear of gang retaliation, whether or not the State can prove that the gang made an 'actual' decision with respect to this specific witness or the gang failed to retaliate for every witness." *Id.* In this case, the State was not required to elicit testimony from Pegues that the Gangster Disciples had a practice of retaliating against witnesses or that they had actually threatened him. The State permissibly relied on the notion that Pegues would be afraid to testify against a fellow gang member regardless of the existence of an actual threat or official retaliation policy.

¶ 63    Because the gang evidence introduced at defendant's trial was admissible, it is not arguable that, had counsel raised the issue of its admissibility, defendant would have succeeded in his appeal. Thus, even if defendant had raised this issue in his postconviction petition, we would find that the trial court did not err in summarily dismissing it.

¶ 64                                  III. CONCLUSION

¶ 65    For the reasons stated, we affirm the summary dismissal of defendant's postconviction petition. Defendant is not entitled to second-stage proceedings due to the clerk's delay in docketing his petition, and his petition failed to state the gist of a claim of ineffective assistance of appellate counsel.

¶ 66    Affirmed.