2026 IL App (1st) 241788-U

No. 1-24-1788

Order filed June 4, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 21572 |
| | ) | |
| JOSE SUAREZ, | ) | Honorable |
| | ) | Jennifer Frances Coleman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Navarro and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The summary dismissal of defendant's *pro se* postconviction petition is affirmed where he waived his claim of ineffective assistance of plea counsel by not including it in his petition and raising it for the first time on appeal.

¶ 2    Defendant Jose Suarez, who pled guilty to solicitation of murder in exchange for a sentence of 17 years in prison, appeals from the first-stage summary dismissal of his *pro se* petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2024)). On appeal, Mr. Suarez contends that summary dismissal was improper where he raised an

arguable claim that his plea counsel was ineffective for failing to recognize and raise the defense of improper venue. We conclude that Mr. Suarez has waived this argument because he did not raise it in his petition and, accordingly, affirm.

¶ 3    Following a 2010 bench trial, Mr. Suarez was found guilty of possessing 900 grams or more of cocaine with intent to deliver and sentenced to 15 years in the Illinois Department of Corrections. Mr. Suarez's conviction was based on evidence showing that, on April 7, 2010, he was found sitting inside a parked minivan with codefendant Luis Sanchez holding a lidless box containing a large plastic bag of cocaine. We affirmed Mr. Suarez's conviction and sentence on direct appeal (*People v. Suarez*, No. 1-10-3070 (2010) (unpublished order under Illinois Supreme Court Rule 23) and affirmed the summary dismissal of his subsequent postconviction petition challenging that conviction under the Act (*People v. Suarez*, 2014 IL App (1st) 121720-U).

¶ 4    On November 12, 2013, the State filed a four-count indictment charging Mr. Suarez with (I) solicitation of murder for hire based on an allegation that he solicited Juan Carrillo; (II) solicitation of murder for hire based on an allegation that he solicited Jimmie Tolbert; (III) solicitation of murder based on an allegation that he solicited Mr. Carrillo; and (IV) solicitation of murder based on an allegation that he solicited Mr. Tolbert.

¶ 5    On September 24, 2015, Mr. Suarez pled guilty to count IV in exchange for a sentence of 17 years in prison, to be served at 85%, and to run consecutively to his 15-year sentence from 2010. The State nol-prossed counts I, II, and III. The stipulated factual basis for the plea established that Mr. Suarez, while imprisoned at the Illinois River Correctional Center, solicited his cellmate, Mr. Tolbert, and an undercover officer, Mr. Carrillo, for assistance in murdering Mr. Sanchez. Mr. Tolbert and Mr. Carillo secretly recorded multiple conversations with Mr. Suarez discussing

details of the planned murder. Mr. Suarez did not move to vacate his guilty plea or take a direct appeal.

¶ 6    On February 28, 2023, Mr. Suarez filed a *pro se* pleading titled "Request for State's Attorney to Consider Resentencing Pursuant to 725 ILCS 5/123 (Revised 122-9)." He asked the State to consider his prison disciplinary record and his "record of rehabilitation while imprisoned." He also asked the State to consider the "true facts" of his case and claimed he was coerced to participate in a "fictitious conspiracy" that was created to favor his cellmate. He also asked the State to consider "the impossibility of the crime" where Mr. Sanchez, who was in state and federal custody and was then deported, faced no threat of violence or death. Based on the above considerations, Mr. Suarez asked the State to request that the trial court resentence him to a concurrent rather than consecutive prison term or reduce his 17-year sentence for solicitation of murder to 6 years.

¶ 7    The circuit court denied Mr. Suarez's request to consider resentencing. The court noted that only the State's Attorney had the authority to bring a motion for resentencing under section 122-9 of the Code of Criminal Procedure (725 ILCS 5/122-9 (West 2022)). Mr. Suarez appealed but subsequently moved to dismiss his appeal, acknowledging that he had no authority to file the request and, therefore, the court's denial was not an appealable order. We granted Mr. Suarez's motion and dismissed the appeal. See *People v. Suarez*, No. 1-24-0708 (Sept. 24, 2024) (unpublished disposition order).

¶ 8    On March 16, 2023, Mr. Suarez filed a *pro se* petition for relief from a "void" judgment under section 2-1401 of the Code of Civil procedure (Code) (735 ILCS 5/2-1401 (West 2022)), alleging that his conviction for solicitation of murder violated several of his constitutional rights.

He alleged that the recording of his conversations violated his right to privacy; that the Cook County circuit court lacked both personal and subject matter jurisdiction to convict him because he and Mr. Tolbert were in a correctional facility in Fulton County when the "alleged crime" occurred; and that new evidence showed it was impossible for the murder to occur because Mr. Sanchez was in an Illinois prison during the time alleged in the indictment. Mr. Suarez also claimed his plea counsel rendered ineffective assistance by coercing him into pleading guilty.

¶ 9 The circuit court denied the petition, finding that it had jurisdiction over the case and that Mr. Suarez's constitutional arguments were not cognizable in a section 2-1401 petition. Alternatively, the court found that Mr. Suarez's claims failed on their merits as he did not have a reasonable or legitimate expectation of privacy in his prison cell and his claim that plea counsel forced or coerced him to plead guilty lacked factual support and was conclusory. On appeal, we granted counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and affirmed. *People v. Suarez*, No. 1-23-2299 (2025) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 10 On June 13, 2024, Mr. Suarez filed the *pro se* postconviction petition at issue in this appeal. Mr. Suarez titled the sections of his petition "Introduction," "Facts," "Legal Claims," and "Memorandum." Relevant here, in the "Introduction," Mr. Suarez stated that the police installed secret recording devices in his prison cell and then used the resulting recordings to charge and prosecute him for solicitation of murder. Regarding plea counsel, he stated:

> "Public Defender refused to investigate and form a defense and advised [Mr. Suarez] to consider entering a plea of guilty warning [him] that she would not form a defense for trial the trial court would ultimately find [Mr. Suarez] guilty and sentence [him]

to 60 (sixty) years imprisonment, telling [Mr. Suarez] that [he] would die in prison of old age.

Threatened and under duress [Mr. Suarez] was forced to enter a plea of guilty in return for State's 'Plea Bargain' to recommend 17 years of imprisonment."

¶ 11    In the "Facts" section, Mr. Suarez set forth the circumstances of his 2010 conviction, complained about his lack of access to the prison legal library and classrooms, and asserted he was innocent of solicitation of murder. In the section titled "Legal Claims," he set forth eight arguments labeled with letters: (a) he was wrongfully convicted of the drug charge; (b) he was innocent of the drug charge; (c) he was illegally recorded by the police; (d) he was illegally prosecuted with recordings obtained by secret eavesdropping; (e) he had no intention to harm or kill Mr. Sanchez and the State used illegal recordings and "baiting" to influence a plan to kill; (f) the State "over prosecuted" him and construed the secret recordings of his private conversations as solicitation "when the elements did not exist [and] at most the conversations amounted to an imaginary conspiracy"; (g) he was innocent of solicitation; and (h) the police entrapped him.

¶ 12    Finally, in the "Memorandum" section, Mr. Suarez argued that newly discovered evidence showed that he was innocent of the drug charge and that Mr. Sanchez was the sole guilty party. He further argued that, if he had not been wrongfully convicted of the drug charge, the State would not have secretly recorded him and charged him with solicitation of murder. He asserted that in its "report," the State never stated he commanded, encouraged, or requested Mr. Sanchez's murder, but, instead, stated only that he enlisted aid in carrying out a plan. As such, he argued, the State alleged acts that constituted conspiracy, but not solicitation. He alleged that the conspiracy was fictitious, as he never intended to kill Mr. Sanchez and Mr. Sanchez could not have been harmed

because he had been deported. Finally, Mr. Suarez asserted that he had terminated his efforts to promote or facilitate commission of the conspiracy.

¶ 13    On August 2, 2024, the circuit court issued a written order summarily dismissing Mr. Suarez's petition as frivolous and patently without merit. The court construed the petition as alleging six claims: (1) he is actually innocent; (2) he was illegally recorded by the police; (3) he was prosecuted with illegally obtained evidence; (4) he did not intend to cause great bodily harm or death to Mr. Sanchez; (5) the State over-prosecuted him; and (6) the police entrapped him into solicitation. The court addressed and rejected each of these claims.

¶ 14    On appeal, Mr. Suarez contends that his petition should not have been summarily dismissed.

¶ 15    The Act provides a mechanism by which defendants may assert that their convictions were the result of a substantial denial of their constitutional rights. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). In cases not involving the death penalty, the Act provides a three-stage process for adjudication. 725 ILCS 5/122-1 (West 2024); *Hodges*, 234 Ill. 2d at 9. The instant case involves the first stage of the process, during which the trial court independently assesses the petition, taking the allegations as true and giving the petition a liberal construction. *Hodges*, 234 Ill. 2d at 10, 21. Based on this review, the trial court must determine whether the petition "is frivolous or is patently without merit," and, if it so finds, dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2024).

¶ 16    A petition may be dismissed as frivolous or patently without merit "only if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 16. A petition has no arguable basis in law when it is founded in "an indisputably meritless legal theory"; for example, a legal theory that is completely belied by the record. *Id.* A petition has no arguable basis in fact when it

is based on a "fanciful factual allegation," which includes allegations that are "fantastic or delusional" or contradicted by the record. *Id.* at 16-17; *People v. Buford*, 2023 IL App (1st) 201176, ¶ 30. Our review of a first-stage dismissal is *de novo*. *Hodges*, 234 Ill. 2d at 9. Pursuant to this standard, we review the trial court's judgment, not the reasons given for it. *People v. Munz*, 2021 IL App (2d) 180873, ¶ 27.

¶ 17 Mr. Suarez contends that summary dismissal of his *pro se* petition was erroneous where he raised an arguable claim that his plea counsel was ineffective for failing to recognize and raise the defense of improper venue for the charges of solicitation of murder. Asserting that "the entirety of events that prompted charges for solicitation of murder" occurred in Fulton County, he concludes that Cook County was an improper venue for prosecution of those charges. Mr. Suarez asserts that it is arguable that plea counsel acted unreasonably by failing to realize that venue was improper and that he was arguably prejudiced by counsel's neglect of the issue because, had counsel recognized the issue, he

> "could have refused to plead guilty in the improper county; would not have involuntarily waived the defense of improper venue; could have potentially been offered a plea with different and better terms; potentially taken his chances at trial, where he would have the benefit of an appeal without all non-jurisdictional issues being waived; or held the State to its burden within the proper venue."

¶ 18 The State responds that Mr. Suarez statutorily waived the claim that his plea counsel was ineffective for not recognizing and raising the defense of improper venue where he raised no such claim in his petition. The State asserts that this court may not review a claim first injected into a

case on appeal. In the alternative, the State argues that the claim of ineffectiveness is frivolous and patently without merit.

¶ 19    In his reply brief, Mr. Suarez argues that he did not waive his claim of ineffective assistance of counsel. He maintains that, taken as a whole, his petition clearly alleged that plea counsel refused to form a defense. That defense, he explains, "should have been improper venue."

¶ 20    Section 122-2 of the Act requires that a postconviction petition "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2024). Section 122-3 of the Act provides: "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2024). Our supreme court has emphasized that "claims not raised in a petition cannot be argued for the first time on appeal" and has criticized this court for "overlook[ing] the waiver language of section 122-3 and *** address[ing] claims raised for the first time on appeal for various and sundry reasons." *People v. Jones*, 213 Ill. 2d 498, 505-06 (2004).

¶ 21    The *Jones* court provided an illustration of how such a waived issue may come to be raised on appeal:

> "[T]he typical *pro se* litigant will draft an inartful pleading which does not survive scrutiny under the 'frivolity/patently without merit' standard of section 122-2.1, and it is only during the appellate process, when the discerning eyes of an attorney are reviewing the record, that the more complex errors that a nonattorney cannot glean are discovered. The appellate attorney, not wishing to be remiss in his or her duty, then adds the newly discovered error to the appeal despite the fact that the claim was never considered by the trial court in the course of its ruling. The thought process behind the attorney's actions is clear—the attorney

- 8 -

is zealously guarding the client's rights and is attempting to conserve judicial resources by raising the claim expeditiously at the first available chance. These goals are laudable, but they nonetheless conflict with the nature of appellate review and the strictures of the Act." *Jones*, 213 Ill. 2d at 504-05.

Our supreme court advised that, rather than attempting to argue such claims for the first time on appeal from the denial of a postconviction petition, "[t]he proper forum for the claim is a successive postconviction action." *Id.* at 508-09.

¶ 22 The scenario described in *Jones* appears to have occurred in this appeal. We agree with the State that the argument Mr. Suarez is making on appeal was not raised in the petition and, therefore, is waived.

¶ 23 Our decision in *People v. Shief*, 2016 IL App (1st) 141022, is instructive. In *Shief*, the defendant argued that his petition should not have been summarily dismissed "because it stated the gist of a claim that his appellate counsel was ineffective for failing to raise a challenge to the admissibility of gang evidence presented at trial." *Id.* ¶ 2. We affirmed the summary dismissal, concluding that the defendant had waived that argument because it was not raised in his petition. *Id.* ¶ 4. In doing so, we recognized that the petition alleged that the defendant's counsel on direct appeal was ineffective. *Id.* ¶ 50. However, the defendant's petition "did not specifically allege that his appellate attorney was ineffective for failing to challenge the admissibility of the gang evidence" but instead "listed three [other] issues that he claimed his appellate attorney should have raised." *Id.* We explained:

"Even liberally construing the contentions in the petition, we fail to see how defendant raised this claim below. Defendant did not raise this issue by simply asserting

that his appellate counsel was ineffective. [Citation.] And defendant never discussed the inadmissibility of the gang evidence in the portion of his petition that discussed his appellate attorney's performance. *** And without any indication that defendant was raising this claim in his petition, the trial court did not address it in its written order dismissing defendant's petition. [Citation.]" *Id.* ¶ 53.

¶ 24 Here, Mr. Suarez does not dispute that claims not raised in a petition are waived. Rather, he asserts that he raised the issue of ineffective assistance of counsel in the introduction section of his petition, where he stated that his plea counsel "refused to investigate and form a defense and advised [him] to consider entering a plea of guilty warning [him] that she would not form a defense for trial."

¶ 25 The issue now asserted on appeal—that plea counsel was ineffective *for failing to recognize and raise the defense of improper venue*—was not raised in the petition. At most, Mr. Suarez's petition claimed that plea counsel failed to investigate and form a defense. Even under a liberal construction, we cannot agree that Mr. Suarez's general phrasing articulated any specific basis as to how or why plea counsel was allegedly deficient.

¶ 26 In this manner, the instant case is similar to *Shief*, where we found that the issue of appellate counsel's failure to challenge the admissibility of gang evidence was forfeited, notwithstanding that the petition alleged other failures by appellate counsel. *Id.* ¶¶ 49-54. Here, Mr. Suarez asserted a general allegation that plea counsel was ineffective for refusing to investigate and form a defense for trial. Although we construe the allegations of a *pro se* petition liberally, this claim is too broad and vague to have apprised the circuit court of a claim that plea counsel was ineffective for failing to recognize and raise the defense of improper venue. Indeed, while the circuit court in this case

addressed six claims in its order summarily dismissing Mr. Suarez's petition, none of them involved venue. See *id.* ¶ 53 ("And without any indication that defendant was raising this claim in his petition, the trial court did not address it in its written order dismissing defendant's petition."); *People v. Cole*, 2012 IL App (1st) 102499, ¶ 13 (refusing to consider " 'implicit' claims in the defendant's postconviction petition *** raised for the first time on appeal when those postconviction issues were never ruled upon by the circuit court").

¶ 27     As noted, section 122-2 of the Act requires that the petition must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2010). A petition that alleges ineffective assistance generally, or on one or more grounds, does not clearly set forth a claim that counsel was ineffective on all grounds. See *Shief*, 2016 IL App (1st) 141022, ¶ 53; *People v. Reed*, 2014 IL App (1st) 122610, ¶¶ 57-63 (where petition did not clearly set forth the specific claims of ineffective assistance of counsel raised on appeal, the claims were forfeited). Here, Mr. Suarez's petition did not set forth the gist of a claim that his plea counsel was ineffective for failing to recognize and raise improper venue as a defense. As such, the claim is waived (see 725 ILCS 5/122-3 (West 2024)) and we affirm the first-stage dismissal of Mr. Suarez's petition without addressing the merits of his argument.

¶ 28     For the reasons explained above, we affirm the judgment of the circuit court.

¶ 29     Affirmed.