# Illinois Official Reports

## Appellate Court

---

### *People v. Lentz*, **2014 IL App (2d) 130332**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTY A. LENTZ, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0332 |
| Filed | January 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The summary dismissal of defendant's postconvicion petition as frivolous and patently without merit was reversed and the cause was remanded for further proceedings, since the petition was filed and docketed on August 27, 2012, and the trial court had no authority to summarily dismiss the petition on March 15, 2013, more than 90 days later. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 06-CF-1790; the Hon. John J. Kinsella, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Kathleen T. Zellner, Douglas H. Johnson, and Nicholas M. Curran, all of Kathleen T. Zellner & Associates, P.C., of Downers Grove, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa A. Hoffman and Kristin M. Schwind, Assistant State's Attorneys, of counsel), for the People. |

Panel                JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1      The defendant, Christy Lentz, was convicted of the first-degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) of her father, Michael Lentz, and was sentenced to 50 years' imprisonment. She appealed, arguing that the trial court erred in denying her motion to suppress statements, refusing to instruct the jury on involuntary manslaughter, and allowing a photograph of the victim to be published to the jury. We affirmed. *People v. Lentz*, 2011 IL App (2d) 100448-U. Her subsequent petition for leave to appeal to the supreme court was denied. *People v. Lentz*, No. 113079 (Ill. Nov. 30, 2011).

¶ 2      On August 27, 2012, the defendant timely filed a postconviction petition, in which she argued that she received ineffective assistance of her trial counsel. A copy of the circuit court's computerized docket shows that the filing of the petition was entered into the circuit court's records. The next day, on August 28, 2012, the clerk sent a letter to the defendant's attorney, informing him that a $40 filing fee was due, which could be paid by dropping off or mailing in a check. The docket reflects that the fee was paid on September 6, 2012. On January 25, 2013, the clerk of the circuit court set a hearing date of January 30 for the petition. The docket notation for that date states, "placed on call by judge[']s secretary."

¶ 3      On January 30, the parties appeared before the trial court, which commented that it was seeing the petition for the first time and briefly discussed the possibility that the 90-day period for initial review pursuant to section 122-2.1(a) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-2.1(a) (West 2012)) might have run. The court set the petition for status on March 15, 2013. On that date, the court entered a two-page order summarily dismissing the petition. In the order, the court found that "the 90 day time limit did not commence until January 30, 2013," because it began running when the case was "docketed," which did not occur until the petition was "placed on the call of a judge and set for hearing before that assigned judge." The court noted that, under a local rule, the hearing date on papers filed with the clerk was set at the request of the attorney filing the papers rather than by the clerk, something the defendant's attorney apparently did not know. Finally, the court found that the petition was frivolous and patently without merit, thereby justifying summary dismissal.

¶ 4      The defendant filed a timely appeal, arguing that (1) the trial court erred in entering a summary dismissal more than 90 days after the petition was filed and docketed, and (2) the petition had stated the gist of a constitutional claim and thus should have proceeded to the

second stage of postconviction proceedings. As we find the defendant's first argument correct, we do not reach the second.

¶ 5    The Act establishes a three-stage process for adjudicating a postconviction petition. *People v. Jones*, 213 Ill. 2d 498, 503 (2004). The postconviction proceeding is "commenced by filing [a petition] with the clerk of the court in which the conviction took place." 725 ILCS 5/122-1(b) (West 2012). "The clerk shall docket the petition for consideration by the court *** upon his or her receipt thereof and bring the same promptly to the attention of the court." *Id.*

¶ 6    Section 122-2.1(a) provides that, "[w]ithin 90 days after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon pursuant to this section." 725 ILCS 5/122-2.1(a) (West 2012). That provision further states that, if the trial court determines that the petition is frivolous or patently without merit, it must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2012). This type of summary dismissal is a "first-stage dismissal." However, "if the petition is not dismissed pursuant to this Section, the court shall order the petition to be docketed for further consideration in accordance with Sections 122-4 through 122-6" of the Act–in other words, the petition must proceed to the second stage. 725 ILCS 5/122-2.1(b) (West 2012).

¶ 7    "[T]he time requirement contained in section 122-2.1(a) is mandatory, not directory ***." *People v. Brooks*, 221 Ill. 2d 381, 389 (2006). Accordingly, if the trial court does not enter a summary dismissal within 90 days, it may not do so at all, and instead the petition must proceed to the second stage. *Id.*; *People v. Porter*, 122 Ill. 2d 64, 86 (1988). We review *de novo* the dismissal of a postconviction petition at the first stage. *Gibson v. People*, 377 Ill. App. 3d 748, 750 (2007).

¶ 8    As stated in the Act, the 90-day period within which a summary dismissal may occur begins running when the petition is filed and docketed. 725 ILCS 5/122-2.1(a) (West 2012). Here, the parties agree that the petition was filed on August 27, 2012, but they disagree about when the petition was docketed. (The State suggests that the defendant agrees that docketing occurred in January 2013, but this argument rests on the written equivalent of a slip of the tongue: in her opening brief, the defendant on one occasion refers to the setting of the petition for hearing as "docketing." However, throughout the rest of her brief the defendant argues that the petition was docketed in August 2012. Accordingly, we do not view her one-time slip as a forfeiture of her argument.)

¶ 9    The defendant argues that the petition was docketed on the same day that it was filed, when it was entered into the circuit court's records. The State argues that docketing did not occur until January 25, 2013, the date on which the clerk set a hearing date for the petition. (The State concedes that the trial court erred in stating that the petition was not docketed until January 30, when it was first heard, but notes that we may affirm on any ground supported by the record regardless of the trial court's reasoning (*Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 192 (2007)) and that the summary dismissal would still be timely if the docketing occurred on January 25.)

¶ 10    In *Brooks*, our supreme court considered the meaning of the word "docketing" as used in the Act. In that case, the defendant argued that his postconviction petition was docketed on September 13, 2002, the day the clerk received it, while the State argued that it was not

docketed until it was assigned to the call of a specific judge on September 30, 2002 (the same day it was heard). The court rejected both of these positions and instead found that the petition had been docketed on September 20, 2002, the date on which the clerk had both "entered the petition into the case file [by file-stamping it] and set it for a hearing." *Brooks*, 221 Ill. 2d at 391. After reviewing various dictionary definitions of the verb "docket" that referred to the making of an entry regarding a matter in an official listing of the proceedings, the court explained:

> "Clearly, then, the verb 'docket' connotes more than the mere act of receiving the petition, as defendant suggests. To 'docket' requires that the cause be entered in an official record. Nevertheless, we do not believe that the word 'docket' entails that the case be placed on a specific call of a judge, as the State maintains. The plain meaning of the word connotes that the cause is entered on the court's official docket for further proceedings. The record here reveals that defendant's postconviction petition was 'docketed' within the commonly understood meaning of the word on September 20, 2002, when the clerk of the court entered the petition into the court file and set it for a hearing." *Id*.

¶ 11        Both of the parties before us rely upon the above-quoted portion of *Brooks*. The defendant points to the supreme court's definition of the verb "to docket" as meaning "to enter the petition into the official record for further proceedings," while the State relies on the supreme court's finding that, in that case, "docketing" occurred on the date when the clerk both "entered the petition into the case file and set it for a hearing."

¶ 12        *Brooks* has been parsed and applied twice, both times contrary to the State's position here. In *Gibson*, this court held that a postconviction petition was "docketed" within the meaning of *Brooks*–that is, entered in an official record–when it was filed. *Gibson*, 377 Ill. App. 3d at 751 (reversing the untimely summary dismissal of a postconviction petition). And more recently, the First District of the Appellate Court agreed with this approach in *People v. McCaskill*, 2012 IL App (1st) 110174. In that case, the State made the very same argument that it makes here, asserting that "docketing" occurred when the petition was first placed on a specific judge's call. Relying on the supreme court's clear statement in *Brooks* that docketing does not require the case to be placed on a specific call of a judge, the *McCaskill* court rejected the State's argument. *Id*. ¶ 12. Instead, it held that the petition was docketed when the petition was stamped "Filed" by the clerk of the court. *Id*. ¶ 13 (reversing as untimely the summary dismissal of the postconviction petition).

¶ 13        The State argues that the analyses in both of those cases "utilized an incomplete definition" of docketing, because each looked to the supreme court's definition of that word as meaning "entry on the court's official docket for further proceedings" rather than its finding that, in *Brooks*, docketing occurred on the date when the clerk both filed the petition and set a hearing date. However, it is the supreme court's teaching–its stated definition of docketing, and its *ratio decidendi*, or reasoning–that we must follow, rather than the application of that teaching in the particular case before it. See *Kelley v. Sheriff's Merit Comm'n*, 372 Ill. App. 3d 931, 934 (2007).

¶ 14    The State also argues that, because the legislature chose to use two different words in the statute–filing and docketing–those words must be construed as referring to two different acts. We have no quarrel with this proposition. However, the State's argument overlooks the possibility that the two acts may occur on the same day. Indeed, it appears to us that it is the usual practice of court clerks to note the filing of a postconviction petition in the official record or docket of a case on the same day that the petition is stamped "Filed." Thus, these two dates may often be the same.

¶ 15    Accordingly, we do not foreclose the possibility that the docketing of a petition–its entry into the official record–could occur on a different day than the filing of the petition. Here, however, the record reflects that these two acts did occur on the same day, and that the petition was both filed and docketed on August 27, 2012. If the August 27, 2012, computerized docket entry stating "post conviction petition filed" were not sufficient to show this, the letter sent by the clerk the following day regarding the filing fee necessarily showed that the petition had been "entered into the official record." As the petition was both filed and docketed on August 27, 2012, the trial court was without authority to enter a summary dismissal of the petition pursuant to section 122-2.1(a)(2) of the Act on March 15, 2013, more than 90 days later.

¶ 16    We note in passing that the local rule referenced by the trial court has no application to this issue, as it relates only to the placing of a motion or pleading "on the court's call." In *Brooks*, the supreme court expressly stated that the act of placing a postconviction petition on a call was not necessary to docket the petition. In addition, in the specific case of postconviction petitions, the statute is quite clear that it is the duty of the court clerk, not the defendant's attorney, to docket the petition upon receiving it and "bring the same promptly to the attention of the court." 725 ILCS 5/122-1(b) (West 2012). In light of this language, it may be appropriate for the clerk's office to reconsider its procedures for setting hearings on such petitions.

¶ 17    For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and the cause is remanded for further proceedings.

¶ 18    Reversed and remanded.