# Illinois Official Reports

## Appellate Court

---

### *People v. Begay*, 2018 IL App (1st) 150446

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SALVADOR BEGAY, Defendant-Appellant. |
| | |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-0446 |
| | |
| Filed | June 28, 2018 |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-1570201; the Hon. John J. Hynes, Judge, presiding. |
| | |
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Geneva L. Penson, of Aurora, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Jon Walters, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Burke and Justice Ellis concurred in the judgment and opinion. |

**OPINION**

¶ 1 Petitioner Salvador Begay was convicted after a jury trial of aggravated criminal sexual abuse and sentenced to three years of felony probation, with the first 90 days being served with the Cook County Department of Corrections. See *People v. Begay*, 2013 IL App (1st) 102216-U, ¶¶ 2, 17. No supervised release period was provided. This court affirmed his conviction on March 8, 2013 (*Begay*, 2013 IL App (1st) 102216-U, ¶ 1), and his probation terminated satisfactorily on July 3, 2013.

¶ 2 Five months after the satisfactory termination of his probation, he filed a postconviction petition, which the trial court dismissed for lack of jurisdiction. In denying his motion to reconsider, the trial court found that the petition did not "even get to the first stage" due to its lack of jurisdiction and that his counsel's characterization of the dismissal as a first-stage dismissal was incorrect.

¶ 3 Petitioner now appeals the dismissal, claiming (1) that this was a first-stage summary dismissal and the trial court erred in entering it since first-stage dismissals are prohibited after 90 days and this dismissal occurred more than 90 days after the petition was filed and (2) that petitioner had standing to file a postconviction petition, although he had completed his sentence of probation, since he was still required to register as a sex offender.

¶ 4 For the following reasons we affirm.

¶ 5 BACKGROUND

¶ 6 Since we are faced with a purely legal question on this appeal and since we already set forth in detail the facts of the underlying offense in our prior order, we incorporate that prior order by reference. *Begay*, 2013 IL App (1st) 102216-U, ¶¶ 2-17.

¶ 7 As noted above, petitioner was convicted after a jury trial of aggravated criminal sexual abuse and sentenced to three years of felony probation. *Begay*, 2013 IL App (1st) 102216-U, ¶ 2. A "Termination Order," dated July 3, 2013, states that petitioner complied with the conditions of his probation and that "the period of probation is terminated."

¶ 8 On May 21, 2014, petitioner's counsel, filed a "Notice of Motion," that stated:

"On Friday, May 23, 2014, at 9:30 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable [trial judge], or any judge sitting in his stead, in Courtroom 110 of the Cook County Courthouse at [address] in Bridgeview, Illinois, and then and there inform him of the status of the post-conviction petition filed in this cause on December 6, 2013."

The notice is signed by petitioner's counsel, stamped "Filed" by the clerk of the circuit court on May 21, 2014, and stamped "Received" by the state's attorney's office on "May 21," with no year indicated. Attached to this notice is a "Petition for Post-Conviction Relief," also signed by counsel. The first page of the petition contains three stamps: a "Received" stamp by the state's attorney's office on December 6, 2013, a "Filed" stamp by the clerk of the circuit court on December 6, 2013, and another "Received" stamp by the state's attorney's office on "May 21," with no year indicated.

¶ 9 The last page of the petition is signed, but not dated, by counsel. There are three affidavits attached that are signed and notarized on the following dates: (1) October 27, 2013; (2) October 18, 2013; and (3) October 16, 2013.

¶ 10    The petition alleges that petitioner is actually innocent and that his trial counsel was ineffective for failing to interview and call at trial the three witnesses whose affidavits are attached. The substantive claims of the petition are not at issue at this time.

¶ 11    With respect to the filing date of his petition, the State in its appellate brief asserts that petitioner "filed a post-conviction petition with two dates on it: December 6, 2013, and May 21, 2014." Similarly, the trial court observed in open court that the petition had two filing dates. By contrast, petitioner in his brief asserts that his petition was "filed on December 6, 2013."

¶ 12    The State asserts that, "the very first day the petition was before [the trial court] for consideration" was July 18, 2014, and the court dismissed the petition on that day for lack of jurisdiction. By contrast, petitioner asserts that "[t]he court took no action on the petition until July 14, 2014, 225 days after the petition was filed. At that time, the court summarily dismissed [it.]"

¶ 13    The first notation appearing in the trial court's half-sheets after defendant's successful termination of probation on July 3, 2013, is for June 26, 2014. The notation for June 26, 2014, states, in relevant part: "DF Pet for P.C. relief 1st stage O/C 7/18/14 1st Stage."

¶ 14    The next transcript of proceedings is for July 18, 2014, and it shows that the State was not present. A counsel identified himself for the record and then explained that he was appearing on behalf of "the lawyer who filed the PC on behalf of [petitioner]." The trial court then ruled as follows, in full:

> "THE COURT: Well, let her know that she filed this too late. [Petitioner], in order to file a post-conviction petition under the post-conviction act, and the most recent case that kind of lays this out in the Illinois Supreme Court is, *People v. Jesus Carrera*, C-a-r-r-e-r-a, 239 Ill. 2d. 241, 2010 case.
>
> But, it sets forth that the act provides that any person imprisoned in the penitentiary may institute a proceeding under this article. And, the court reiterated that you don't have to actually be in the penitentiary. The probation period is satisfactory.
>
> However, the Supreme Court has held that the act did not require actual incarceration. But, any person—the words, 'imprisoned in the penitentiary,' prevent those who have completed their sentence from using the act for [re]medial machinery solely to purge their criminal records. Rather only those whose liberty was actually restrained or entitled to the protection code [*sic*] for the act.
>
> In this case, the defendant received probation—three years probation, on or about the date of July 9, of 2010. That probation was terminated satisfactorily on July 3rd, 2013.
>
> This petition—there are two dates on this. They were never called up before the Court, by the way. She never came up before the Court on this. There are two stamps on this. One being May 21, 2014. But, the prior one was December 6, 2013. Even by the earlier stamp, the defendant was not considered imprisoned or in the penitentiary that is needed in the act in order to have jurisdiction.
>
> So consequently, the Court does not have jurisdiction. And the motion for post-conviction relief will be denied. You're all set."

Nothing further was stated that day in open court.

¶ 15 On August 18, 2014, petitioner's counsel filed a motion to reconsider. The motion, which was signed by counsel, stated: "The petition was hand-delivered to the clerk's office by Petitioner's Counsel." Immediately after those words, the following words are crossed out by hand: "and entered on the clerk's system (the court's official docket)." The petition states: "Despite filing the petition." Immediately after these words, the following words are crossed out: "and entering an entry indicating that it was filed." The petition states: "in this case, the petition was filed in the clerk's office [crossed-out words] December 6, 2013." The crossed-out words are: "and the clerk docketed the petition or entered it into the clerk's system on the same day in this case."

¶ 16 The petition further states: "The instant petition was never placed on this court's call until July 18, 2014, 225 days after the petition was filed [crossed-out words] in the clerk's office." The crossed-out words are: "and docketed." Similarly, the petition states: "this court wrongly entered a first-stage dismissal more than 90 days after the petition was received in the clerk's office [crossed-out words]." The crossed-out words are: "and docketed."

¶ 17 A footnote to the motion states, in relevant part, that:

"[B]etween May and July 2014, Petitioner's counsel (or her representative) twice went to the clerk's office and filed notices, noticing up the case, but the clerk failed to put the case on the call. Petitioner's counsel repeatedly called a supervisor named *** to inquire as to why the clerk was not putting the case on the call, but counsel's many messages were never returned."

¶ 18 On September 5, 2014, counsel filed an amended motion to reconsider. The amended motion contains no cross-outs and alleges, in relevant part, that

"1. Petitioner filed his Petition for Post-Conviction Relief on December 6, 2013.

2. The petition was hand-delivered to the clerk's office by Petitioner's counsel, and entered on the court's official docket (marked file-stamped) that same day."

¶ 19 On October 3, 2014, the parties appeared in open court: both an assistant state's attorney, as well as the counsel who had filed the petition. With respect to the filing date, the court and counsel held the following colloquy:

"THE COURT: [Y]ou originally filed your motion for post-conviction relief back on December 6, 2013, am I correct there?

DEFENSE COUNSEL: That's correct, yes.

THE COURT: All right. And you also claimed that you gave notice to the State's Attorney on that date?

DEFENSE COUNSEL: Yes.

THE COURT: I see the stamp on here.

DEEFNSE COUNSEL: Yes, I did.

THE COURT: For whatever reason it was refiled May 21, 2014. But the December 6th date of 2013 is the date we are talking about. All right?

DEFENSE COUNSEL: Yes."

¶ 20 The trial court observed that in her motion to reconsider she indicated that the trial court had dismissed the petition at the first stage. However, the trial court stated: "That's not what I did." In response, defense counsel argued that any "consideration as to timeliness" or "eligibility for post-conviction relief" could only be "made after a motion by the State." The

trial court replied: "Negative. That's no." Then the trial court explained that being imprisoned or on probation or parole

> "is a requirement. That's a first step before you can do this. *** We don't even get to the first stage because he is not imprisoned under the statute. *** we don't get to even the first stage here because he does not qualify, he does not meet the qualifications under the Act."

¶ 21 The trial court denied the motion to reconsider, stating:

> "THE COURT: This is jurisdictional. You don't even have the right to file this because he hasn't met that. There is no way around it. It is iron clad.
>
> The motion to reconsider is denied, and the prior order of July 18th to stand. Thank you."

¶ 22 On November 3, 2014, counsel filed a notice of appeal, and this appeal followed.

¶ 23 ANALYSIS

¶ 24 Petitioner appeals the dismissal of his postconviction petition, claiming (1) that the dismissal was a first-stage summary dismissal and the trial court erred in entering it more than 90 days after the petition was filed and (2) that he had standing to file a postconviction petition, although his sentence had terminated, since he was still subject to sex offender registration.

¶ 25 For the following reasons, we affirm.

¶ 26 I. Stages of a Postconviction Proceeding

¶ 27 The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) "provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9 (2009); *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 143. Specifically, section 122-1 of the Act provides:

> "(a) Any person imprisoned in the penitentiary may institute a proceeding under this Article if the person asserts that:
>
> (1) in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both[.]" 725 ILCS 5/122-1(a) (West 2016).

¶ 28 Although the Act uses the words "in the penitentiary," our supreme court has found that the Act also applies to a person serving a sentence of probation or on mandatory supervised release or parole. *People v. Carrera*, 239 Ill. 2d 241, 246 (2010). Thus, the Act permits a person under a criminal sentence to challenge his or her conviction or his or her sentence for violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006) (citing *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005)).

¶ 29 To be entitled to postconviction relief, a petitioner bears the burden of establishing that a substantial deprivation of his constitutional rights occurred "in the proceedings that produced the conviction or sentence being challenged." *Pendleton*, 223 Ill. 2d at 471; *People v. Waldrop*, 353 Ill. App. 3d 244, 249 (2004); 725 ILCS 5/122-1(a)(1) (West 2016).

¶ 30    In noncapital cases, the Act contemplates three stages. *Pendleton*, 223 Ill. 2d at 471-72. At the first stage, the trial court has 90 days to review a petition and may summarily dismiss it if the trial court finds that the petition is frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016); *Pendleton*, 223 Ill. 2d at 472. If the trial court does not dismiss the petition within that 90-day period, the trial court must docket it for further consideration. 725 ILCS 5/122-2.1(b) (West 2016); *Pendleton*, 223 Ill. 2d at 472.

¶ 31    If the petition survives this initial review, the process moves to the second stage, where the trial court appoints counsel for the petitioner who cannot afford counsel. 725 ILCS 5/122-4 (West 2016). Appointed counsel may make any amendments that are "necessary" to the petition previously filed by the *pro se* defendant. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). After counsel has amended the petition, the State may file a motion to dismiss or file an answer. 725 ILCS 5/122-5 (West 2016); *Pendleton*, 223 Ill. 2d at 472. "If the State moves to dismiss, the trial court may hold a dismissal hearing, which is still part of the second stage." *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009) (citing *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998)).

¶ 32    At a second-stage dismissal hearing, a trial court is foreclosed from engaging in any fact finding because all well-pleaded facts must be taken as true at the second stage. *Wheeler*, 392 Ill. App. 3d at 308 (citing *Coleman*, 183 Ill. 2d at 380-81).

¶ 33    If the petition proceeds, it advances to a third-stage evidentiary hearing. "[W]hen a petitioner's claims are based upon matters outside the record, the Postconviction Act does not intend such claims [to] be adjudicated on the pleadings." *People v. Snow*, 2012 IL App (4th) 110415, ¶ 15; see also 725 ILCS 5/122-6 (West 2016); *Pendleton*, 223 Ill. 2d at 472-73. At an evidentiary hearing, the trial court "may receive proof by affidavits, depositions, oral testimony, or other evidence," and "may order the [defendant] brought before the court." 725 ILCS 5/122-6 (West 2016).

¶ 34    When a matter is decided without an evidentiary hearing, we review the trial court's decision under a *de novo* standard of review. *People v. Hommerson*, 2014 IL 115638, ¶ 6 (first-stage summary dismissal); *Tyler*, 2015 IL App (1st) 123470, ¶ 151 (second-stage dismissal (citing *Pendleton*, 223 Ill. 2d at 473)). Thus, a *de novo* standard of review applies to the case at bar. Under a *de novo* standard, the reviewing court owes no deference to the trial court's judgment or reasoning. *Tyler*, 2015 IL App (1st) 123470, ¶ 151 (citing *People v. Vincent*, 226 Ill. 2d 1, 14 (2007). *De novo* consideration means that the reviewing court performs the same analysis that a trial judge would perform. *Tyler*, 2015 IL App (1st) 123470, ¶ 151.

¶ 35    In addition, a reviewing court may affirm on any basis found in the record. *In re Gabriel W.*, 2017 IL App (1st) 172120, ¶ 31; *People v. Miles*, 2017 IL App (1st) 132719, ¶ 22; *People v. Daniel*, 2013 IL App (1st) 111876, ¶ 37 ("we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct").

¶ 36                                    II. Statutory Interpretation

¶ 37    This appeal requires us to interpret the words of the Act and decide what the Act requires.

¶ 38    "With statutory construction, our primary goal is to ascertain the legislat[ors'] intent, and the best indication of their intent is the plain and ordinary meaning of the words they chose to use." *Miles*, 2017 IL App (1st) 132719, ¶ 25; *State of Illinois ex rel. Pusateri v. Peoples Gas*

*Light & Coke Co.*, 2014 IL 116844, ¶ 8 (citing *Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23). Where the language is plain and unambiguous, we apply the statute without resort to further aids of statutory interpretation. *In re Lance H.*, 2014 IL 114899, ¶ 11. "When interpreting a statute, we do not read a portion of it in isolation; instead, we read it in its entirety, keeping in mind the subject it addresses and the drafters' apparent objective in enacting it." *Miles*, 2017 IL App (1st) 132719, ¶ 25; *People v. Chatman*, 2016 IL App (1st) 152395, ¶ 30.

¶ 39    "In addition, whenever possible, every word, clause, and sentence is to be given reasonable meaning and shall not be treated as superfluous or rendered void." *Mulry v. Berrios*, 2017 IL App (1st) 152563, ¶ 9; *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 68 ("one of the principles of statutory interpretation is that we should give effect to every word and section of the statute"); *Speedy Gonzalez Landscaping, Inc. v. O.C.A. Construction, Inc.*, 385 Ill. App. 3d 699, 701 (2008) (" 'If possible, courts must give effect to every word, clause, and sentence and may not read a statute so as to render any part inoperative, superfluous, or insignificant.' " (quoting *Newland v. Budget Rent-A-Car Systems, Inc.*, 319 Ill. App. 3d 453, 456 (2001)).

¶ 40    Questions of statutory interpretation are reviewed *de novo*. *People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 28; *Chatman*, 2016 IL App (1st) 152395, ¶ 23. As we observed above, "*[d]e novo* review means that we will perform the same analysis a trial court would perform." *Trzop v. Hudson*, 2015 IL App (1st) 150419, ¶ 63.

¶ 41                                    III. 90-Day Time Limit

¶ 42    Petitioner argues, first, that the trial court summarily dismissed the petitioner more than 90 days after it was filed, which he claims that the Act prohibits. In response, the State argues that the trial court dismissed the petition within 90 days after docketing, thereby satisfying the statute.

¶ 43    The Act provides that "[a] proceeding shall be commenced by filing with the clerk of the court" a petition. 725 ILCS 5/122-1(b) (West 2016). "Petitioner shall also serve another copy upon the State's Attorney ***." 725 ILCS 5/122-1(b) (West 2016). "The clerk shall docket the petition for consideration by the court *** upon his or her receipt thereof and bring the same promptly to the attention of the court." 725 ILCS 5/122-1(b) (West 2016). "Within 90 days after the filing *and docketing* of each petition, the court *shall* examine such petition and enter an order thereon pursuant to this Section." (Emphases added.) 725 ILCS 5/122-2.1(a) (West 2016). "If the petition is not dismissed pursuant to this Section, the court shall order the petition to be docketed for further consideration ***." 725 ILCS 5/122-2.1(b) (West 2016).

¶ 44    As to the two filing dates, the trial court found, as a matter of fact, and after questioning counsel, that the petition was filed on December 6, 2013, and the State does not dispute this factual finding.[1] Thus, the next question for this court is whether the 90-day period is counted from the filing or the docketing of the petition.

¶ 45    This division already considered this same question and found that the 90-day period is counted from the docketing of the petition. *People v. Shief*, 2016 IL App (1st) 141022, ¶¶ 30-32. Writing on behalf of this division, Justice Ellis explained why:

---

[1]The State's appellate brief acknowledges that the stamps on the petition "indicat[e] it was received and filed on December 6, 2013."

"The remedy of automatic advancement [to the second stage] would force the hand of the judge based on the actions of a distinct governmental official, the clerk. Circuit judges would lose control of their docket based on something entirely outside their control. While that may feel like a distinction without a difference to a prisoner awaiting the adjudication of his postconviction petition, it might be one reason why the General Assembly imposed a consequence for the circuit court's failure to promptly act on a postconviction petition while *not* imposing such a remedy for the clerk's inaction." (Emphasis in original.) *Shief*, 2016 IL App (1st) 141022, ¶ 32.

Based on *Shief*, we find that the 90-day period is counted from docketing.[2] See also *People v. Swamynathan*, 236 Ill. 2d 103, 116 (2010) ("postconviction petition was properly dismissed within 90 days of docketing as required by the Act").[3]

¶ 46      The next issue is when that key moment of docketing occurs. In *People v. Brooks*, 221 Ill. 2d 381 (2006), our supreme court explained when the moment of docketing occurs for purposes of the Act. The *Brooks* defendant had argued that a petition is considered docketed for purposes of the Act at the moment when the clerk of the circuit court receives it (*Brooks*, 221 Ill. 2d at 388) and stamps " 'Received' " on it (*Brooks*, 221 Ill. 2d at 389). Our supreme court rejected that interpretation and found that "[t]he plain meaning of the word connotes that the cause is entered on the court's official docket for further proceedings." *Brooks*, 221 Ill. 2d at 391. Applying that definition to the facts before it, the court found that the "defendant's postconviction petition was 'docketed' within the commonly understood meaning of the word *** when the clerk of the court entered the petition into the case file *and set it for a hearing*." (Emphasis added.) *Brooks*, 221 Ill. 2d at 391.

¶ 47      In the case at bar, the trial court observed that the petition was "never called up before the Court." After the petition's filing on December 6, 2013, the half-sheet shows that the petition was not docketed and not set for a hearing. "A half-sheet is a sheet on which the clerk's office enters chronological notations indicating the procedural events of a case." *People v. Jones*, 2015 IL App (1st) 133123, ¶ 8 n.3. A half-sheet entry is also called a "docket" entry (*People v. Cooper*, 2015 IL App (1st) 132971, ¶ 7), and it may be relied on as some evidence of certain legal events. *People v. Liekis*, 2012 IL App (2d) 100774, ¶ 33 (although the record did not contain a written jury waiver, the half-sheet established that the defendant had waived a jury); *People v. Brials*, 315 Ill. App. 3d 162, 177 (2000) (same). In the case at bar, after the petition was refiled on May 21, 2014, it appeared on the half-sheet shortly thereafter, and the trial court acted promptly and within 90 days to review it on July 18, 2014. Thus, the record before us does not show a violation of the 90-day period.

¶ 48      *People v. Lentz*, 2014 IL App (2d) 130332, cited by petitioner, further supports our conclusion. In *Lentz,* the appellate court observed that the State argued that, "because the legislature chose to use two different words in the statute—filing and docketing—those words

_____

[2]In *Shief*, the parties agreed that, the first time that defendant mailed in his *pro se* petition, the clerk did not docket it "or notify the court that defendant had sent in a postconviction petition." *Shief*, 2016 IL App (1st) 141022, ¶ 25. Thus, this court did not need to discuss exactly what constituted docketing.

[3] In *Swamynathan*, 236 Ill. 2d at 113, the supreme court found that, when a trial court recharacterizes a document as a postconviction petition, the 90-day period begins to run from the moment the petitioner is admonished by the trial court about the recharacterization of the document. This constitutes "docketing" for purposes of the Act. *Swamynathan*, 236 Ill. 2d at 116.

must be construed as referring to two different acts." *Lentz*, 2014 IL App (2d) 130332, ¶ 14. The *Lentz* court concluded: "We have no quarrel with this proposition." *Lentz*, 2014 IL App (2d) 130332, ¶ 14. Similarly, we agree that, to avoid surplusage, the two words must mean different actions. *Lysek v. Elmhurst Dodge, Inc.*, 325 Ill. App. 3d 536, 542 (2001) ("As a general rule, courts should avoid interpretations that treat [statutory] language as surplusage and should instead attempt to give meaning to all of the words used."); see also *Mitchell v. Village of Barrington*, 2016 IL App (1st) 153094, ¶ 29 ("The presence of surplusage should not be presumed in statutory construction and each word, clause, or sentence must, if possible, be given some reasonable meaning."). Thus, we do not find persuasive the cases that have found that filing and docketing are the same action. But see *People v. McCaskill*, 2012 IL App (1st) 110174, ¶ 14 (finding that filing and docketing are the same); *Gibson v. People*, 377 Ill. App. 3d 748, 751 (2007) (equating filing with docketing).[4]

¶ 49        The *Lentz* court found that to docket meant "to note the filing of a postconviction petition in the official record or docket of a case," which the *Lentz* court observed would usually, but not always, occur on the same day as filing. *Lentz*, 2014 IL App (2d) 130332, ¶ 14. In short, "the docketing of a petition" meant "its entry into the official record." *Lentz*, 2014 IL App (2d) 130332, ¶ 15. The *Lentz* court found, in the case before it, that filing and docketing had unquestionably occurred on the same day, where (1) the petition was entered on the circuit court's computerized docket sheet and (2) the record showed that the clerk had sent a letter to the petitioner's attorney informing him that the filing fee was now due. *Lentz*, 2014 IL App (2d) 130332, ¶ 15. In stark contrast to the facts of *Lentz*, (1) the petition in our case was *not* entered in the circuit court's half-sheets or docket sheets when originally filed and (2) the record shows that the clerk of the circuit court took no action until the petition was refiled. Thus, applying the *Lentz* definition of docketing to the facts of our case supports our finding that the petition was not docketed when originally filed.

¶ 50                                    IV. Timing of the Dismissal

¶ 51        The trial court found that the statutory 90-day period was not relevant because the lack of jurisdiction meant that the statute did not even apply. " '[B]ecause circuit court jurisdiction is granted by the constitution, it cannot be the case that the failure to satisfy a certain statutory requirement or prerequisite can deprive the circuit court of its "power" or jurisdiction to hear a cause of action.' " *People v. Castleberry*, 2015 IL 116916, ¶ 15 (quoting *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 30). " 'A circuit court, on the other hand, "is a court of general jurisdiction, which need not look to the statute for its jurisdictional authority." ' " *Castleberry*, 2015 IL 116916, ¶ 15 (quoting *LVNV Funding*, 2015 IL 116129, ¶ 31, quoting *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 530 (2001)). " ' "[A] circuit court's subject matter jurisdiction is conferred entirely by our state constitution." ' " *Castleberry*, 2015 IL 116916, ¶ 15 (quoting *LVNV Funding*, 2015 IL 116129, ¶ 35, quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002)). The supreme court in *Castleberry* found that these same rules applied to criminal cases for the same reasons. *Castleberry*, 2015 IL 116916, ¶¶ 16-18. On appeal, the parties phrase the issue as whether petitioner had standing rather than

---

        [4]After discussing both *McCaskill* and *Gibson*, the *Lentz* court observed: "it is the supreme court's teaching—its stated definition of docketing, and its *ratio decidendi*, or reasoning—that we must follow." *Lentz*, 2014 IL App (2d) 130332, ¶ 13. We agree.

whether the court had jurisdiction. The next question for us then is whether standing was a permitted consideration at this point in the postconviction proceedings.

¶ 52    In *Hommerson*, our supreme court explained what can and cannot be considered at the first stage of postconviction proceedings. It found that, "at the first stage of proceedings, the court should only determine whether the petition alleges constitutional deprivations." *Hommerson*, 2014 IL 115638, ¶ 10. As a result, a trial court may not consider procedural issues, such as timeliness or whether a defendant filed a required verification affidavit. *Hommerson*, 2014 IL 115638, ¶¶ 10-11. The supreme court emphasized that, "at the first stage of proceedings, the court considers the petition's substantive virtue rather than its procedural compliance." *Hommerson*, 2014 IL 115638, ¶ 11.

¶ 53    In the case at bar, the trial court found that there was a step, even before this first stage, at which the trial court considers its own jurisdiction. The trial court found that a determination of whether a petitioner qualified as "imprisoned" under the Act was required to determine the court's own subject matter jurisdiction. 725 ILCS 5/122-1(a) (West 2016). The question is whether this matter is a procedural consideration prohibited by *Hommerson*.

¶ 54    In some respects, the case at bar is similar to *Carrera*. In *Carrera*, our supreme court found that a petitioner had no remedy under the Act where his probation had already terminated satisfactorily (*Carrera*, 239 Ill. 2d at 258). However, in *Carrera*, the petition had already proceeded to the second stage, and thus, our supreme court was affirming a second-stage dismissal. *Carrera*, 239 Ill. 2d at 244, 259. By contrast, in the case at bar, the petition has not yet proceeded to the second stage and this is what petitioner is arguing should have happened here.

¶ 55    However, the petitioner in the case at bar suffered little prejudice[5] by an earlier review. *Shief*, 2016 IL App (1st) 141022, ¶ 42 ("Typically, when we consider prejudice, we consider prejudice to a party's ability to properly prepare and present its case."). Typically, when the petition of an indigent prisoner proceeds to the second stage, that is when he or she first gains the benefit of counsel. See 725 ILCS 5/122-4 (West 2016). That is the moment when counsel is usually appointed. Before then, the trial court is typically reviewing only a *pro se* petition. By contrast, petitioner in the case at bar had the benefit of counsel from the petition's inception. Thus, in the interests of judicial economy and since the issue presented here is a purely legal question—whether sex offender registration status qualifies as "imprisoned" under the Act—we chose to review this issue, which has been thoroughly briefed and argued by counsel on both sides. See *People v. Bailey*, 2017 IL 121450, ¶ 49 ("because the question of whether defendant's motion demonstrates cause and prejudice is a question of law and in the interest of judicial economy, we have chosen to review defendant's motion in lieu of remanding the [postconviction petition] to the circuit court"); *People v. Holman*, 2017 IL 120655, ¶ 32 (where the claim in the postconviction petition required no factual development and "in the interests of judicial economy," our supreme court chose "to address the merits of the defendant's claim").

---

[5]While the State may have chosen at the second stage not to move to dismiss on this basis, defendant cannot object "on behalf of the State" that the State no longer had the choice whether to make a motion once the trial court dismissed. *Cf. People v. Matthews*, 2016 IL 118114, ¶ 21 ("defendant cannot object to improper service or lack of personal jurisdiction on behalf of the State").

¶ 56                                    V. Not Imprisoned

¶ 57        For the reasons discussed below, we find that sex offender registration status does not qualify as "imprisoned" under the Act. 725 ILCS 5/122-1(a) (West 2016).

¶ 58        As this division recently explained in *People v. Jones*, 2018 IL App (1st) 151307, ¶ 52, sex offender registration does not qualify as punishment. We observe that the Third District reached a different finding than we did. *People v. Tetter*, 2018 IL App (3d) 150243, ¶ 3. In a 2-to-1 decision, the Third District found that sex offender registration act constituted punishment. *Tetter*, 2018 IL App (3d) 150243, ¶ 3; *Jones*, 2018 IL App (1st) 151307, ¶¶ 55-61 (discussing *Tetter*). The State filed a petition for rehearing in *Tetter* on February 21, 2018, and as of May 30, 2018, that petition was still pending. As a result, the Third District's decision is not yet final.

¶ 59        However, with respect to sex offender registration, our supreme court has stated "it is worth repeating that sex offender registration is not punishment." *People v. Cardona*, 2013 IL 114076, ¶ 24. Based on *Cardona*, this court found: "Whether we agree or disagree with the reasoning in *Tetter*, we must follow our supreme court's precedent until and unless our supreme court dictates otherwise." *Jones*, 2018 IL App (1st) 151307, ¶ 61.

¶ 60        The supreme court's decision in *Carrera* is instructive. In *Carrera*, as in our case, the defendant was sentenced to probation. *Carrera*, 239 Ill. 2d at 243. In *Carrera*, as in our case, the defendant filed a postconviction petition only after he had completed his sentence of probation. *Carrera*, 239 Ill. 2d at 243. In *Carrera*, defendant argued that he had standing to file his petition because his conviction now made him subject to deportation and the federal Immigration and Naturalization Service (INS) had, in fact, instituted deportation proceedings against him. *Carrera*, 239 Ill. 2d at 243, 245. The *Carrera* court observed that "this court has held that the Act does not require actual incarceration as a strict prerequisite to instituting a proceeding under the Act." *Carrera*, 239 Ill. 2d at 246. As a result, a person may file a petition under the Act if he or she is released on mandatory supervised release, on probation, on parole, or on an appeal bond. *Carrera*, 239 Ill. 2d at 246. However, our supreme court found that being subject to deportation did not qualify as being imprisoned for purposes of the Act. *Carrera*, 239 Ill. 2d at 253. The court found that the defendant had "fully served his Illinois sentence." *Carrera*, 239 Ill. 2d at 253. Similarly, in the case at bar, petitioner has fully served his Illinois sentence, because sex registration does not qualify as punishment.

¶ 61        Since sex offender registration is not punishment, we cannot find that a petitioner subject to it is thereby "imprisoned" under the Act. 725 ILCS 5/122-1(a) (West 2016); accord *People v. Downin*, 394 Ill. App. 3d 141, 146 (2009) ("we hold that lifetime registration as a sex offender is not a constraint on liberty sufficient to bring it within the Act"); *People v. Stavenger*, 2015 IL App (2d) 140885, ¶ 12 ("we reject defendant's contention that he has standing under the Act by virtue of his having to register as a sex offender"). Thus, petitioner lacked standing to file his petition under the Act, and the trial court did not err in dismissing his petition.

¶ 62        In *People v. Ortiz*, 235 Ill. 2d 319, 330 (2009), our supreme court observed that "in a nondeath case, where a defendant sets forth a claim of actual innocence *** the defendant is excused from showing cause and prejudice." "This court has held that the due process clause of the Illinois Constitution affords postconviction petitioners the right to assert a freestanding claim of actual innocence based on newly discovered evidence." *Ortiz*, 235 Ill. 2d at 331. However, petitioner, who is represented by counsel, has not asserted on appeal that he has a freestanding claim of actual innocence, separate and apart from the Act and, thus, we do not

reach that issue. See *People v. Shellstrom*, 216 Ill. 2d 45, 52 (2005) (courts may recharacterize filings in order to aid *pro se* litigants who may have chosen the wrong vehicles for their claims). Similarly, petitioner has not asked us to consider whether his petition qualifies as a section 2-1401 petition. 735 ILCS 5/2-1401 (West 2016); *People v. Lawton*, 212 Ill. 2d 285, 299 (2004) (a defendant subject to the Sexually Dangerous Persons Act may "utilize section 2-1401 to assert claims of ineffective assistance of counsel"); see also *People v. Shinaul*, 2017 IL 120162, ¶ 8 (although "[a] civil remedy," section 2-1401 "extends to criminal cases" and may be utilized to seek relief from a criminal conviction).

¶ 63    While the result here may seem harsh because petitioner no longer has the remedies provided by the Act, and "[w]hile [we are] sympathetic to defendant's plight, this court cannot expand the remedy set forth in the Act in order to bring defendant's case within the reach of the Act." *Carrera*, 239 Ill. 2d at 259.

¶ 64                                                  CONCLUSION

¶ 65    For the foregoing reasons, we affirm the dismissal of petitioner's postconviction petition.

¶ 66    Affirmed.