# Illinois Official Reports

## Appellate Court

---

### *People v. Johnson*, 2019 IL App (1st) 163169

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RECARDO JOHNSON, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-16-3169 |
| Filed | December 31, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-17223; the Hon. Alfredo Maldonado, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Maggie A. Heim, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Justices Cunningham and Harris concurred in the judgment and opinion. |

¶ 1 In this appeal, defendant Recardo Johnson argues that the circuit court erred in summarily dismissing his *pro se* petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 (West 2016)) on the basis of standing. For the following reasons, we affirm.

¶ 2 I. BACKGROUND

¶ 3 In October 2007, Mr. Johnson pleaded guilty in case No. 07 CR 17223 to the offense of unlawful restraint (see 720 ILCS 5/10-3 (West 2006)) in exchange for a sentence of two years' imprisonment. Before Mr. Johnson entered his plea, the court informed him:

"Mr. Johnson, you are charged with the offense of unlawful restraint ***.

That in the State of Illinois is what is referred to as a Class 4 felony, which means it's punishable by 1 to 3 years in the Illinois State Penitentiary. If I find you have been found guilty of the same or greater class felony within the last ten years, the maximum penitentiary time in this case can increase all the way up to 6 years.

In addition, upon your release from the penitentiary there would be a period of 1 year mandatory supervised release. That's sometimes referred to as parole."

¶ 4 Upon entering his plea, Mr. Johnson said he understood he was giving up certain rights by pleading guilty, including his right to plead not guilty and have a jury trial. Mr. Johnson said he was not threatened or promised anything in exchange for his plea.

¶ 5 The State provided a factual basis for the plea, the circuit court found that Mr. Johnson pleaded guilty to the charge freely and voluntarily, and the court accepted the plea. The court then sentenced Mr. Johnson to two years in prison and admonished him of his right to a direct appeal. Mr. Johnson did not avail himself of that right.

¶ 6 On July 18, 2016, Mr. Johnson, *pro se*, moved the circuit court to file a late postconviction petition. In the petition, Mr. Johnson said that he was presently incarcerated, he had been incarcerated for approximately one year, and the lateness of his filing was not due to his culpable negligence. Mr. Johnson filed his petition under case No. 07 CR 1722301, the case in which he had pleaded guilty to unlawful restraint in October 2007. Mr. Johnson argued in his petition that the age of the victim in his case was never stated in court, that the circuit court never informed him that he would need to register under the Child Murderer and Violent Offender Against Youth Registration Act (Violent Offender Act) (see 730 ILCS 154/1 *et seq.* (West 2006)), and that his plea counsel was ineffective for failing to tell him he would need to register under the Violent Offender Act.

¶ 7 On September 30, 2016, the circuit court summarily dismissed Mr. Johnson's petition. The court noted that Mr. Johnson had not withdrawn his 2007 guilty plea or appealed that conviction and had already served the term of imprisonment and mandatory supervised release (MSR) to which he was sentenced in case No. 07 CR 1722301. The circuit court noted that at the time he filed his petition, Mr. Johnson was independently serving "a term of two years of imprisonment for failure to register" under the Violent Offender Act in case No. 14 CR 1312801. The circuit court's opinion indicated that it obtained this information from the website for the Illinois Department of Corrections. Citing *People v. Pack*, 224 Ill. 2d 144, 150 (2007), the circuit court stated that the Act "and its remedies are not available to petitioners who have completed their sentences and merely seek to purge their criminal records." The

court found that, because Mr. Johnson was "no longer imprisoned or otherwise in the custody of the [Illinois Department of Corrections]" as it related to the case in which he claimed error in his petition, the petition was frivolous and patently without merit.

## II. JURISDICTION

¶ 9     Mr. Johnson timely filed his notice of appeal on September 30, 2016. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 606 (eff. Mar. 20, 2009) and 651 (eff. Dec. 1, 1984), governing criminal appeals and appeals from final judgments in postconviction proceedings.

## III. ANALYSIS

¶ 11     On appeal, Mr. Johnson argues that the circuit court erred in dismissing his petition at the first stage on the basis of standing. However, this single argument gives rise to two separate questions: (1) whether standing is ever an appropriate consideration at the first stage of postconviction proceedings and, if so, (2) whether, in this case, Mr. Johnson's argument that he has standing is frivolous or patently without merit. We consider each question in turn.

¶ 12     First, Mr. Johnson argues that standing is never an appropriate basis for dismissal at the first stage of postconviction proceedings. The State, on the other hand, argues that the circuit court properly dismissed Mr. Johnson's petition based on standing at the first stage because, if it is clear that a defendant lacks standing, his petition is necessarily frivolous and patently without merit. We agree with the State.

¶ 13     The Act "provides a three-stage process for adjudicating postconviction petitions." *People v. Hommerson*, 2014 IL 115638, ¶ 7. At the first stage the circuit court determines whether the petition is frivolous or patently without merit, which our supreme court has defined as "having no basis in law or fact and obviously without legal significance." *People v. Blair*, 215 Ill. 2d 427, 445 (2005). If the court finds the petition to be frivolous or patently without merit, it dismisses the petition; if not, the petition proceeds to the second stage of proceedings, at which point the court may appoint counsel to represent an indigent defendant. *Hommerson*, 2014 IL 115638, ¶¶ 7-8. We review the dismissal of a postconviction petition *de novo*. *Id.* ¶ 6.

¶ 14     What the circuit court may consider at the first stage of postconviction proceedings is a question our supreme court has focused on primarily in three cases: *People v. Boclair*, 202 Ill. 2d 89 (2002); *Blair*, 215 Ill. 2d 427; and *Hommerson*, 2014 IL 115638. In *Boclair*, the court found that the timeliness of a petition was not a proper subject for consideration at the first stage of postconviction proceedings. *Boclair*, 202 Ill. 2d at 97. In so holding, the supreme court noted first that timeliness and frivolousness are addressed by two separate sections of the Act (see 725 ILCS 5/122-1(c) (West 2000) (timeliness); *id.* § 122-2.1(a)(2) (frivolousness)). *Boclair*, 202 Ill. 2d at 100. The court continued:

> "Under a plain reading of section 122-2.1(a)(2), the circuit court may dismiss a post-conviction petition at the initial stage only if the petition is deemed to be 'frivolous or *** patently without merit,' not if it is untimely filed. *** By addressing timeliness and frivolousness in separate provisions of the Act, the legislature plainly intended to draw a distinction between these two flaws of post-conviction petitions.

> To accept the argument that the circuit court has the authority to dismiss a petition pursuant to section 122-2.1(a)(2) of the Act we would have to hold, contrary to the

language of the Act, that the phrase 'frivolous or *** patently without merit' encompasses untimely petitions. We will not ignore the Act's language and adopt this interpretation. If a petition is untimely that does not necessarily mean that the petition lacks merit." *Id.* at 100-01.

¶ 15 The supreme court then went on to define the words used in section 122-2.1(a)(2): " '[f]rivolous' has been defined as 'of little weight or importance: having no basis in law or fact.' [Citations.] '[P]atently' means 'CLEARLY, OBVIOUSLY, PLAINLY.' [Citations.] 'Merit' means 'legal significance, standing, or importance.' [Citations.]" *Id.* at 101. Importantly, the court concluded that "[t]hese terms do not include issues of timeliness." *Id.* "Further, time is not an inherent element of the right to *bring* a post-conviction petition. [Citation.] For that reason, time limitations in the Act should be considered as an affirmative defense and can be raised, waived, or forfeited, by the State." (Emphasis in original.) *Id.*

¶ 16 In *Blair*, our supreme court held that a circuit court may consider at the first stage whether claims in a petition are barred by *res judicata* or forfeiture. *Blair*, 215 Ill. 2d at 429-30. The court noted that both *res judicata* and forfeiture are "inherently legal determinations which may bar relief under the Act. Thus, an otherwise meritorious claim has no basis in law if *res judicata* or forfeiture bar the claim." *Id.* at 445. And because "*res judicata* and forfeiture preclude a defendant from obtaining relief, such a claim is necessarily 'frivolous' or 'patently without merit.' " *Id.* The court therefore concluded that "the legislature intended that the court be allowed to make legal determinations based on both *res judicata* and forfeiture" and that "[t]o hold otherwise, we would be forcing courts to waste judicial resources by merely delaying the dismissal of a petition which the judge knows could never bear fruit for the petitioner." *Id.* at 446-47.

¶ 17 The supreme court in *Blair* distinguished its holding on *res judicata* and forfeiture from its holding in *Boclair* on timeliness, noting that section 122-2.1(c) specifically allows the circuit court to " 'examine the court file of the proceeding in which the petitioner was convicted,' " and that, "[u]nlike timeliness, *res judicata* and forfeiture do not have exceptions which would require a factual determination at the summary dismissal stage, such as the culpable negligence exception to timeliness, requiring credibility determinations." *Id.* at 450 (quoting 725 ILCS 5/122-2.1(c) (West 2002)). The court concluded by saying, in part:

"Since section 122-2.1(a)(2) expressly requires the petition to be 'frivolous or patently without merit,' trial courts will rely upon those grounds for summary dismissal where it is clear from the facts ascertainable in the record that the petitioner's claims are barred by legal concepts of *res judicata* or forfeiture. Thus, where the court need look only at the record of the former proceedings, it may properly dismiss the petition." *Id.*

¶ 18 Finally, in *Hommerson*, our supreme court considered whether a postconviction petition may be dismissed at the first stage on the basis that it lacked a verification affidavit, as required by section 122-1(b) of the Act (see 725 ILCS 5/122-1(b) (West 2010)). *Hommerson*, 2014 IL 115638, ¶ 6. Following *Boclair*, the court in *Hommerson* held that "the circuit court may not dismiss a petition at the first stage of proceedings solely on the basis that it lacked a verification affidavit." *Id.* ¶ 11. The crucial factor that the *Hommerson* court highlighted was whether the consideration was procedural or substantive in nature; as the *Hommerson* court itself stated, "[a]llowing a trial judge to *sua sponte* dismiss a petition" on the sole basis that it lacked a verification affidavit would "conflict[ ] with our prior holdings that, at the first stage of

- 4 -

proceedings, the court considers the petition's substantive virtue rather than its procedural compliance." *Id.*

¶ 19    In keeping with this distinction between "substantive virtue" and "procedural compliance," we think it clear that standing relates to the "substantive virtue" of a postconviction claim and therefore may be an appropriate consideration for the first stage of postconviction proceedings. "[S]tanding" is defined as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." Black's Law Dictionary (11th ed. 2019). Like *res judicata* or forfeiture, the right of a petitioner to bring a legal claim goes directly to the merits of that claim. Like *res judicata* and forfeiture, standing does not have an "exception[ ] which would require a factual determination at the summary dismissal stage" as timeliness does. See *Blair*, 215 Ill. 2d at 450. And like *res judicata* and forfeiture, standing can often be determined from the circuit court's examination of "the court file of the proceedings in which the petitioner was convicted," which it is explicitly permitted to do by section 122-2.1(c) of the Act. 725 ILCS 5/122-2.1(c) (West 2016).

¶ 20    Relying on the supreme court's observations in both *Boclair* and *Hommerson* that timeliness and the verification affidavit requirements were addressed in separate sections of the Act from frivolousness (compare *id.* § 122-1(b) (verification affidavit) and *id.* § 122-1(c) (timeliness) with *id.* § 122-2.1(a)(2) (frivolousness)), Mr. Johnson argues that standing, also governed by a separate section (see *id.* § 122-1(a)), should, like timeliness and the lack of a verification affidavit, not be considered at the first stage of postconviction proceedings. Although we acknowledge the court's comments on the structure of the legislation, it is clear to us in reading *Hommerson* that, as we noted above, the crucial point on which the supreme court has relied is the distinction between the substantive aspects of a claim and the procedural requirements for filing one.

¶ 21    Consideration of standing at the first stage is consistent not only with *Boclair*, *Blair*, and *Hommerson* but also with this court's own precedent. In *People v. Steward*, 406 Ill. App. 3d 82, 90 (2010), which was decided before *Hommerson*, this court held that standing was properly considered at the first stage of proceedings because a petition filed by someone without standing is necessarily without merit. We reaffirmed *Steward* in *People v. Vinokur*, 2011 IL App (1st) 090798, ¶¶ 13-14, recognizing that the "legislature intended for the ' "frivolous or *** patently without merit" ' standard to encompass the issue of standing."

¶ 22    Mr. Johnson argues that, more recently, in *People v. Begay*, 2018 IL App (1st) 150446 (2018), we suggested that *Hommerson* calls into question our holding in *Steward* that standing can be considered at the first stage of postconviction proceedings. We do not read *Begay* that way; rather, the court in *Begay* simply noted that the petitioner in that case was represented by an attorney at the first stage of proceedings and thus "suffered little prejudice" from the court's consideration of standing at the first stage instead of at the second stage when a *pro se* petitioner would have been appointed counsel. *Id.* ¶ 55. We think our holding in *Steward*, as affirmed in *Vinokur*, survives and is consistent with our supreme court's analysis in *Hommerson*.

¶ 23    Because we find that the circuit court properly considered Mr. Johnson's standing at the first stage of postconviction proceedings, we now consider whether Mr. Johnson's argument that he has standing is frivolous or patently without merit.

¶ 24    The Act provides that "[a]ny person imprisoned in the penitentiary may institute a proceeding under [the Act] if the person asserts that" "in the proceedings which resulted in his

or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2016). But because "actual incarceration is not a strict prerequisite" to invoke postconviction relief (*People v. West*, 145 Ill. 2d 517, 519 (1991)), exactly what it means to be "imprisoned in the penitentiary" has been considered by Illinois courts on numerous occasions. As recognized by our supreme court in *West*, the phrase "imprisoned in the penitentiary" "has been held to include defendants who have been released from incarceration after the timely filing of their petition [citation], released on appeal bond following conviction [citation], released under mandatory supervision [citation], and sentenced to probation [citation]." *Id.*

¶ 25        In *West*, the defendant was sentenced to death in the state of Arizona for murder, a sentence that was in part aggravated by a prior Illinois conviction for voluntary manslaughter. *Id.* at 518. The defendant filed a postconviction petition in Illinois challenging his Illinois conviction. *Id.* The supreme court, however, noted that the defendant had completed both his sentence and MSR for his Illinois conviction and concluded that the defendant's present imprisonment in Arizona was "not imprisonment within the meaning of the language in the [Act]." *Id.* at 519. The supreme court stated that a postconviction petitioner "must be in prison for the offense he is purporting to challenge." *Id.*

¶ 26        In contrast, the supreme court found in *Pack*, 224 Ill. 2d at 147, 152, that a defendant was "imprisoned" for purposes of the Act when he was serving consecutive sentences of 60 and 7 years, even though he challenged the conviction that resulted in the 7-year sentence after being in prison for 13 years. The court reasoned that, because the "defendant's liberty [wa]s certainly curtailed by the state due to his status as a prisoner" and the Illinois Department of Corrections "treats consecutive sentences in the aggregate," the defendant's successful challenge to either of his convictions that resulted in his consecutive sentences would advance his release date and would accordingly have a direct effect on his liberty. *Id.* at 152.

¶ 27        Relying on *West* and *Pack*, this court more recently found that a defendant who was serving a natural-life sentence in Illinois did not have standing to challenge his prior conviction that was "used as an element in sentencing him in [the] subsequent murder conviction." *People v. Dent*, 408 Ill. App. 3d 650, 653-54 (2011). The *Dent* court first noted that "[t]he common thread" in cases that had defined a defendant as imprisoned for purposes of the Act "is that the defendants were pursuing a liberty interest *** and that invalidating the challenged convictions would advance the defendants' release dates from the constraints affecting their liberty." *Id.* at 652-53. The court then stated:

> "The facts of the instant case are more similar to those in *West* than those in *Pack*. The *Pack* defendant had not completed his sentence for the challenged conviction because the two consecutive sentences were *considered as one*. Consequently, the invalidation of the challenged conviction would reduce the sentence for *that offense* such that the restraints on his liberty could be reduced by seven years. In contrast, because defendant successfully completed his sentence for the challenged conviction, his liberty interest for the [prior] murder cannot be affected. Rather, defendant effectively requests the ability to purge his record. The supreme court has been clear that a defendant may not use the Act to purge his record of a conviction for which the sentence has been completed." (Emphases in original.) *Id.* at 654.

See also *Steward*, 406 Ill. App. 3d at 90 ("a person serving a new sentence enhanced by a previous conviction does not have standing to challenge that previous conviction").

¶ 28    Mr. Johnson's current imprisonment is not the direct result of the 2007 conviction that he is challenging in his postconviction petition. Mr. Johnson had completed his prison sentence and MSR for that conviction well before he filed the petition. Upon his release, Mr. Johnson was required to register under the Violent Offender Act (see 730 ILCS 154/1 *et seq.* (West 2006)). This court has, however, repeatedly held that registration as a sex offender—under a statutory scheme that is similar to the Violent Offender Act—is not a part of a defendant's criminal sentence. *Begay*, 2018 IL App (1st) 150446, ¶¶ 57-61; *People v. Stavenger*, 2015 IL App (2d) 140885, ¶¶ 11-12; *People v. Downin*, 394 Ill. App. 3d 141, 146 (2009). Therefore, this imprisonment, which grows out of that registration requirement, cannot be considered a continuation of Mr. Johnson's original sentence.

¶ 29    A postconviction petition should be summarily dismissed if it is found to be frivolous or patently without merit. *Boclair*, 202 Ill. 2d at 100. In *People v. Hodges*, 234 Ill. 2d 1, 16 (2009), our supreme court explained that a petition is frivolous or patently without merit only if it "has no arguable basis either in law or in fact" and is "based on an indisputably meritless legal theory or a fanciful factual allegation." Although in some cases the issue of standing may be nuanced enough that it would be inappropriate for the circuit court to dismiss a petition at the first stage, that is simply not the case here. Mr. Johnson does not dispute that his sentence and MSR for the 2007 conviction are both completed, and his counsel cannot point to any legal support for an argument that the registration requirement he violated was imposed as part of Mr. Johnson's criminal sentence for the 2007 conviction. In short, there is no arguable basis in fact or in law that would give Mr. Johnson standing to challenge his 2007 conviction at this point. Therefore, the circuit court properly dismissed Mr. Johnson's petition at the first stage.

¶ 30                                    IV. CONCLUSION

¶ 31    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 32    Affirmed.