2022 IL App (2d) 210068
No. 2-21-0068
Opinion filed June 3, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-645 |
| WILLIAM J. ROSS, | ) ) ) | Honorable Michael E. Coppedge, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, William J. Ross, was convicted of first degree murder and found to have personally discharged a firearm that caused the death of the victim, Jacqueline Shaefer. 720 ILCS 5/9-1(a)(2) (West 2014); 730 ILCS 5/5-8-1(d)(iii) (West 2014). The trial court sentenced him to 24 years' imprisonment for first degree murder and a consecutive 25-year term for the use of a firearm, for a total of 49 years' imprisonment (plus 3 years' mandatory supervised release). On direct appeal, this court affirmed defendant's conviction and sentence. *People v. Ross*, 2018 IL App (2d) 161079. Subsequently, defendant filed a postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). On September 20, 2019, the court summarily dismissed the petition. Before defendant received notice of the dismissal, he

moved for leave to withdraw his petition, and, on September 23, 2019, the court granted the motion and withdrew its dismissal order. On September 18, 2020, defendant filed an amended postconviction petition. On January 7, 2021, the court set the petition for status on January 28, 2021, but, on January 20, 2021, the court summarily dismissed the amended petition. Defendant appeals, arguing that the court erred in dismissing his amended petition at the first stage of postconviction proceedings, where (1) it was required to advance the petition to the second stage because more than 90 days had passed from the date the petition was filed until the court ruled; (2) the court erred in refusing to consider exhibits in its possession that supported the petition's allegations; (3) consideration of the exhibits demanded that the petition advance to the second stage; and (4) even if the exhibits were not considered, the petition established the gist of a constitutional violation, no arguments were waived or forfeited, and the exhibits were not required to advance the petition. Because the trial court did not timely dismiss the petition, we vacate the dismissal and remand for stage-two proceedings.

¶ 2                                    I. BACKGROUND

¶ 3      On August 13, 2014, the State charged defendant, then age 63, with one count of first degree murder, alleging that, sometime in 2012, he shot Shaefer with a gun, thereby causing her death. Schaefer's body was found in a state of advanced decomposition, on November 6, 2013, in her bedroom at defendant's residence in McHenry. Renee Britton, defendant's friend, former girlfriend, and the property's caretaker (defendant was away on a cross-country trip), discovered the body after she gained access to the room. The door to the room was screwed shut. The screws were covered with caulk and duct tape, which were covered with trim and brown paint. No gun or bullets were recovered at the scene. In June 2012, defendant had left McHenry and gone on a cross-country road trip, which continued until November 7, 2013, when he was arrested by local police

in Las Vegas (on a failure-to-appear warrant for a traffic ticket). Subsequently, on July 24, 2014, he was arrested by McHenry County detectives.

¶ 4    The jury found defendant guilty of first degree murder and found that he personally discharged a firearm that caused Schaefer's death. The trial court denied defendant's motion for a new trial and sentenced him to 24 years' imprisonment on the murder conviction and a consecutive 25-year term for the mandatory firearm enhancement. In announcing its sentence, the court commented that the evidence against defendant was "completely overwhelming." It denied his motion to reconsider the sentence.

¶ 5                                    A. Direct Appeal

¶ 6    Defendant appealed, arguing that the trial court erred in denying his motion to suppress statements made to police, where he did not knowingly and intelligently waive his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436 (1966). He also argued that the court erred in admitting evidence of his prior alleged abuse of Schaefer and his ownership of firearms. Finally, defendant challenged the sufficiency of the evidence against him. This court affirmed defendant's conviction and sentence. *Ross*, 2018 IL App (2d) 161079.

¶ 7    On September 26, 2018, the supreme court denied defendant's petition for leave to appeal. *People v. Ross*, No. 123848 (Ill. Sept. 26, 2018).

¶ 8                            B. Postconviction Proceedings

¶ 9    On June 26, 2019, defendant electronically filed a petition seeking postconviction relief. On September 20, 2019, the trial court summarily dismissed defendant's petition. However, also on that date, defendant moved to withdraw his petition. On September 23, 2019, the court granted defendant's motion and, on its own motion, withdrew its September 20 decision.

¶ 10    About one year later, on September 18, 2020, defendant, represented by the same counsel who represented him for his direct appeal but not during the trial, electronically filed a verified first amended petition for postconviction relief. Defendant alleged that (1) he received ineffective assistance of trial counsel, where (a) counsel failed to present expert testimony regarding the time of death, failed to present/elicit certain exculpatory testimony from several witnesses, including defendant, and failed to object in closing argument and (b) the deficient performance prejudiced defendant because the evidence was closely balanced; (2) his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were violated when the State concealed evidence that Schaefer had enemies and at least one of them had threatened to physically harm or kill her; and (3) he was actually innocent of murder and the related charges.

¶ 11    On January 20, 2021, the trial court summarily dismissed defendant's amended petition. As relevant here, the court addressed the timing of its order and determined that, when the petition was electronically filed on September 18, 2020, it was not simultaneously docketed. The docketing date, the court found, was January 7, 2021, and, thus, the 90-day period expired on April 7, 2021.

¶ 12    On February 2, 2021, defendant moved to reconsider the court's dismissal order and attached to his motion exhibits that had not been attached to his amended petition but were referenced therein. Defendant requested that the court reconsider its ruling and/or consider the exhibits in rendering its ruling. On February 11, 2021, the trial court denied defendant's motion to reconsider. Defendant appeals.

¶ 13                                II. ANALYSIS

¶ 14    Defendant argues that the trial court erred in summarily dismissing his amended petition. He contends that (1) the court's ruling was not timely; (2) it erred in not considering exhibits in its possession that supported the petition's allegations; (3) consideration of those exhibits would have

resulted in advancing the petition to the second stage; and (4) even if the exhibits were not considered, the petition stated the gist of a constitutional violation, no arguments were waived/forfeited, and the exhibits were not required to advance the petition. For the following reasons, we agree with defendant that the court's summary dismissal was not timely.

¶ 15    The Act provides a mechanism by which criminal defendants may assert that their convictions or sentences were the result of a substantial violation of their constitutional rights. *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). It is not a substitute for a direct appeal but, rather, allows the defendant to assert a collateral attack on the final judgment. *People v. Edwards*, 2012 IL 111711, ¶ 21. As such, a postconviction proceeding allows inquiry into only constitutional issues that were not and could not have been adjudicated on direct appeal. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009).

¶ 16    The Act provides for a three-stage proceeding, and a defendant must satisfy the requirements of each before continuing to the next stage. *People v. Pendleton*, 223 Ill. 2d 458, 471-72 (2006) (non-death penalty cases). At the first stage, the trial court has 90 days after the filing and docketing of the petition to review it without input from the State. 725 ILCS 5/122-2.1(a)(2) (West 2020). The petition must present the gist of a constitutional claim, and the petition will survive so long as it is not frivolous or patently without merit. *Id.*; *People v. Hodges*, 234 Ill. 2d 1, 16, (2009). A petition that is not dismissed within 90 days must advance to second-stage proceedings under sections 122-4 through 122-6 of the Act (725 ILCS 5/122-4 to 122-6 (West 2020)). *Id.* § 122-2.1(b); *People v. Porter*, 122 Ill. 2d 64, 85 (1988) (the time requirement contained in section 122-2.1(a)(2) is mandatory).

¶ 17    At the second stage, the trial court may appoint counsel for the defendant, if the defendant is indigent. 725 ILCS 5/122-4 (West 2020). After counsel has made any necessary amendments to

the defendant's claims, the State may move to dismiss or may answer the petition. *Id.* § 122-5. The petition and any accompanying documentation must make a substantial showing of a constitutional violation. *Pendleton*, 223 Ill. 2d at 473. All well-pleaded facts that are not positively rebutted by the record are taken as true. *Id.* Finally, at the third stage, the trial court conducts an evidentiary hearing to determine whether a new trial is warranted. *Id.* At that time, it makes fact-finding and credibility determinations. *Id.* The defendant must again make a substantial showing of a constitutional violation. *Id.*

¶ 18    Defendant contends that the trial court's summary dismissal of his petition was not timely. He asserts that over 90 days had passed from the date the amended petition was filed and docketed until the court ruled. We agree.

¶ 19    On September 18, 2020, defendant electronically filed his amended petition for postconviction relief. A January 7, 2021, order, on the court's motion, set the matter for status on January 28, 2021. However, on January 20, 2021, the court summarily dismissed the amended petition. In its written order, the court noted that the petition's filed-stamped date was September 18, 2020, and that 90 days from that date would have been December 17, 2020. However, without explanation, the court found that the petition "was not simultaneously docketed" when it was file-stamped. The circuit court clerk did not docket the petition, the court determined, until January 7, 2021.

¶ 20    Section 122-1 of the Act provides that a postconviction

"proceeding shall be commenced by filing with the clerk of the court in which the conviction took place a petition (together with a copy thereof) verified by affidavit. *** The clerk shall docket the petition for consideration by the court pursuant to Section 122-

2.1 upon his or her receipt thereof and bring the same promptly to the attention of the

court." 725 ILCS 5/122-1(b) (West 2020).

Section 122-2.1(a) provides that, "[w]ithin 90 days after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon pursuant to this Section." *Id.* § 122-2.1(a); see *People v. Watson*, 187 Ill. 2d 448, 451 (1999) (filing of an amended petition restarts the 90-day period). A clerk's failure to promptly docket a postconviction petition pursuant to section 122-1(b) is not reversible error. *People v. Shief*, 2016 IL App (1st) 141022, ¶ 44 (prompt docketing requirement in section 122-1(b) of Act is directory, not mandatory; when clerk does not promptly docket petition, petition does not automatically advance to second-stage proceedings).

¶ 21    The question here is when the amended petition was docketed. In *People v. Brooks*, 221 Ill. 2d 381 (2006), the supreme court explained that,

"the verb 'docket' connotes more than the mere act of receiving the petition, as defendant suggests. To 'docket' *requires that the cause be entered in an official record*. Nevertheless, we do not believe that the word 'docket' entails that the case be placed on a specific call of a judge, as the State maintains. The plain meaning of the word connotes that the cause is *entered on the court's official docket for further proceedings*." (Emphases added.) *Id.* at 389-91 (postconviction petition was docketed when the clerk of the court entered the petition into the case file and set it for hearing; specifically, clerk entered notation on a half-sheet[1] that petition was filed, and a hearing date was set, with the date specified; it

---

[1] A half-sheet, also called a docket entry, " 'is a sheet on which the clerk's office enters chronological notations indicating the procedural events of a case.' " *People v. Begay*, 2018 IL App (1st) 150446, ¶ 47 (quoting *People v. Jones*, 2015 IL App (1st) 133123, ¶ 8 n.3). Half-sheets

also noted that the case was assigned to a particular judge on the specified date; summary dismissal not void).

¶ 22    Here, the beginning of the common law record contains a document entitled "DOCKET LISTING," (called a "CASE DOCKET" in the table of contents), which was apparently printed on April 9, 2021, and contains a chronological listing of activity in defendant's case in the trial court. Two entries dated June 26, 2019, are entitled "NOTICE – FILING" and "PETITION," respectively. Similarly, two entries dated September 18, 2020, are entitled "PETITION – POST CONVICTION" and "NOTICE – FILING." A January 7, 2021, entry contains the description, "ORDER," as does a January 20, 2021, entry.

¶ 23    Relying on the docket listing, defendant argues that his amended petition was docketed on the date it was filed, specifically, September 18, 2020, and that the court had 90 days from this date to rule on the petition, which it did not do. Instead, it ruled on the petition 124 days later, on January 20, 2021.

¶ 24    The State maintains that the record does not reflect the date on which the clerk entered defendant's petition into the case file and set it for a hearing, as the supreme court found sufficient in *Brooks*. Rather, the State continues, the first action of record, *i.e.*, the first recorded entry into an official record, regarding defendant's amended petition after it was filed was that it appeared before the trial court on January 7, 2021. The State contends that the petition was docketed on January 7, 2021, because that is the "next recorded action" after September 23, 2019. In the State's calculations, the court had until April 7, 2021, to conduct its first-stage review and issue a written

_____

have been relied upon to establish, for example, a jury waiver. *Id.* (citing cases).

decision. Thus, it asserts, the court's dismissal on January 20, 2021, was well within the 90-day review period.[2]

¶ 25   Two cases illustrate the application of *Brooks* and are instructive. In *People v. Begay*, 2018 IL App (1st) 150446, ¶ 1, the defendant sex offender completed probation in July 2013. In May 2014, his counsel filed a notice of motion concerning a postconviction petition, a copy of which was attached, that he asserted had been filed in December 2013. The notice was stamped "filed" by the clerk of the court on May 21, 2014. The attached petition contained a December 2013 "filed" stamp by the clerk. The first notation appearing in the court's half-sheets for the relevant period was for June 26, 2014, with a notation referencing that the petition was on call for July 18, 2014. A transcript from that date reflected that the court denied the petition on the basis that the court lacked jurisdiction to consider it, because the defendant had completed his probation before it was filed.

¶ 26   On appeal, the question was whether the petition was dismissed within 90 days after docketing. *Id.* ¶ 42. Preliminarily, the court found (and the parties *agreed*) that the petition was

---

[2]The State also contends that defendant did not properly file his amended petition, asserting that he did not seek leave to do so and that he filed it before the court ruled on his motion to withdraw his initial petition. This is incorrect. Defendant moved to withdraw his initial petition on September 20, 2019, the same date on which the trial court summarily dismissed it. See 725 ILCS 5/122-5 (West 2020) (allowing a defendant to voluntarily withdraw his or her petition at any time before the court enters a final judgment). Three days later, the court granted defendant's motion and withdrew its decision. Defendant did not file his amended petition until about one year later, on September 18, 2020.

filed in December 2013 (*id.* ¶ 44), and it noted that the 90-day period is counted from the date of docketing (*id.* ¶ 45 (citing *Shief*, 2016 IL App (1st) 141022, ¶¶ 30-32)). The court affirmed the dismissal, holding that the petition, which was refiled in May 2014, was docketed on June 26, 2014, when it appeared on the half-sheets, not when it was originally filed. *Id.* ¶¶ 13, 47, 49 (half-sheet showed that, after the petition was initially filed in December 2013, it was *not* docketed and set for hearing and the clerk took no action until the petition was refiled). Further, the court had ruled on it within 90 days, on July 18, 2014. *Id.* ¶ 47.

¶ 27    In *People v. Lentz*, 2014 IL App (2d) 130332, ¶¶ 9-18, this court held that a postconviction petition was filed and docketed on the same date. We relied on two pieces of evidence in the court file: first, a copy of the court's computerized docket, which showed that the filing of the petition was entered into the court's records ( *Id.* ¶ 15) and second, a letter sent the following day by the court clerk to the petitioner's attorney informing him that a filing fee was due, which also showed, we noted, that the petition had been entered into the official record (*id.*). We rejected the State's argument that the petition was docketed five months later, when the clerk set a hearing date for it later that month. *Id.* ¶¶ 11-15.

¶ 28    We conclude that defendant's amended petition was docketed the same day it was electronically filed, *i.e.*, on September 18, 2020. Filing and docketing are not the same actions. *Begay*, 2018 IL App (1st) 150446, ¶ 48. However, they usually occur on the same day (*Lentz*, 2014 IL App (2d) 130332, ¶ 14), especially since the advent of electronic filing. Again, a case is docketed under *Brooks* when it is entered into an official record for further proceedings. *Brooks*, 221 Ill. 2d at 391. Here, the amended petition's filing is reflected in the docket listing in the record, which shows that the petition was filed on September 18, 2020. Accordingly, because the electronic filing appeared on the court's docket listing, it was entered into an official record for

further proceedings on the same date it was filed. Our conclusion is consistent with *Lentz*, where the petition was entered into the clerk's computerized docket sheet on the day it was filed, and this court relied on this fact to conclude that the petition was filed and docketed on the same day. *Lentz*, 2014 IL App (2d) 130332, ¶ 15. In contrast, in *Begay*, which apparently predated electronic filing, the petition was *not* entered into the clerk's (paper) half sheets/docket sheets when it was originally filed and the court looked to the first notation on the half-sheets after the defendant's termination of probation, which was a notation that the petition was on call for a later date. *Begay*, 2018 IL App (1st) 150446, ¶¶ 13, 49. Further, we agree with defendant that there is nothing in the docket listing that suggests that his amended petition was docketed any differently than his first petition, which was properly docketed and upon which the trial court timely ruled.

¶ 29    The trial court did not specify the basis upon which it determined that the amended petition was not docketed until January 7, 2021, nor did it explain how it came to its determination. To the extent it read *Brooks* to require that docketing occurs when the clerk sets a hearing date, this was erroneous. The supreme court clearly held that a petition is docketed when the case is "entered in an official record" "for further proceedings." *Brooks*, 221 Ill. 2d at 391. In the facts before it, the court concluded that the petition was docketed when the clerk entered it into the case file and set it for hearing. *Id.* The court did not conclude that docketing requires that a petition be set for hearing. See *Lentz*, 2014 IL App (2d) 130332, ¶ 13 (we follow the supreme court's teaching or reasoning, not its application of that teaching to the case before it).

¶ 30    In summary, defendant's amended petition was docketed on September 18, 2020, the date on which it was filed, and the trial court was without authority to summarily dismiss the petition on January 20, 2021, more than 90 days later. Accordingly, we vacate the court's dismissal and

remand for stage-two proceedings under the Act (725 ILCS 5/122-2.1(b) (West 2020)), and we need not consider defendant's remaining contentions.

¶ 31                              III. CONCLUSION

¶ 32    For the reasons stated, the judgment of the circuit court of McHenry County is vacated and the cause is remanded for further proceedings.

¶ 33    Vacated and remanded.

2022 IL App (2d) 210068

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 14-CF-645; the Hon. Michael E. Coppedge, Judge, presiding. |
| **Attorneys for Appellant:** | Kathleen T. Zellner and Douglas H. Johnson, of Kathleen T. Zellner & Associates, of Warrenville, for appellant. |
| **Attorneys for Appellee:** | Patrick D. Kenneally, State's Attorney, of Woodstock (Patrick Delfino, Edward R. Psenicka, and John G. Barrett, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |